## STATE v. BECKENDORF.

No. 5225.  Decided May 2, 1932.  (10 P. [2d] 1073.)

*Parnell Black* and *King & King,* all of Salt Lake City, for appellant.

*Geo. P. Parker,* Atty. Gen., and *L. A. Miner,* Deputy Atty. Gen., for the State.

WORTHEN, District Judge.

The defendant was convicted of the crime of resisting an officer in the discharge of his duty. The charging part of the information reads:

"That the said Martha Beckendorf, on the 14th day of March, A. D. 1931, at the County of Salt Lake, State of Utah, did wilfully, unlawfully, and knowingly delay and obstruct duly appointed, qualified and acting Deputy Sheriffs of Salt Lake County, State of Utah, to wit, Van Savage, Tom Callicott and Thomas Williams, who were then and there in the lawful discharge of their duty as such deputy sheriffs, said deputy sheriffs aforesaid being then and there engaged in the lawful arrest of the said Martha Beckendorf."

The defendant relies upon two assignments of error. The first is the refusal of the court to give defendant's requested instruction, and the second is the alleged material variance between the allegations contained in the information and the proof offered at the trial.

Only two witnesses testified in the case; both were called by the state, and neither was cross-examined. T. A. Callicott testified that he was a deputy sheriff of Salt Lake County and that he and certain other officers went to the home of the defendant with a search and seizure warrant for liquor; that he rang the door bell, and the defendant came to the door but did not open it; she turned on the porch light and looked through the glass door. That he had his badge pinned under his coat and turned it out, and Mr. Savage took the search warrant from his pocket but said nothing to the defendant, and she immediately switched off the light and ran to the back part of the house.

He further testified that he then went to the back door and entered the house and found the defendant and her son in the bathroom in the act of destroying liquor. That he seized a gallon jug that had been thrown into the bathtub and the defendant grabbed for the jug; that he held it and continued to push her off with his free hand; that she kept kicking him and trying to hit the jug, and she finally threw a part of a broken jug hitting and cutting his fingers. That he told Mr. Larsen, who was in the bathroom, to take her away, and Larsen took her from the bathroom. That she went into the kitchen and took a butcher knife and started after Mr. Savage; that Mr. Savage acted as though he was

going to draw his gun, and went to her and said, "Oh, for God's sake, we don't want any trouble," and at that the defendant ran into the bedroom and climbed out through a window.

Inar C. Larsen testified that he accompanied Callicot, Savage, and Williams on the raid; that he went to the back door and that he went to the bathroom window and looked through the window and saw them destroying liquor; that he followed Mr. Callicott in and went into the bathroom where Mrs. Beckendorf, the defendant, was destroying liquor. That Mr. Callicott had a gallon jug in his hand, and the defendant was trying to destroy it, and Callicott told him to take her away, "so I took her by the wrist, and she made a kick at me. I kind of turned my side, and she kicked me in the groin, and I took her out in the kitchen, and I said that she had better behave herself, and told her we didn't want to have any trouble, we didn't come down there to fight, so she created quite a bit of disturbance there, kicking and hollering for Fred to get the gun and shoot them, and finally she took a butcher knife—she took the butcher knife and started towards me, and she slid out through the door and went out through a window on the side of the house."

We have set out at length the testimony introduced at the trial. The defendant urges that the proof offered does not support the allegations of the information. The information charges defendant with delaying and obstructing officers then and there engaged in her lawful arrest. The defendant was not charged with obstructing and delaying officers engaged in searching for intoxicating liquor.

Nor can we subscribe to the proposition that the allegation in the information, "being then and there engaged in the lawful arrest of the said Martha Beckendorf," is surplusage and that the information was sufficient to support a conviction without that allegation.

Comp. Laws Utah 1917, § 8002, reads:

"Every person who wilfully resists, delays, or obstructs any public officer in the discharge or attempt to discharge any duty of his office, when no other punishment is prescribed, is punishable. * * *"

The duties that are imposed upon deputy sheriffs in the lawful discharge of their duties are many and various. Being in the performance of one of these duties was the substance of the offense and material to its description. One duty was to conduct the search for intoxicating liquor under authority of the search warrant and is a separate duty from the duty to arrest. The specific duty attempted to be discharged and to which resistance is offered should be alleged in the information. Where an offense may be committed in various ways, the evidence must establish it to have been committed in the mode charged. 31 C. J. § 460, p. 846.

In *Novy* v. *State,* 62 Tex. Cr. R. 492, 138 S. W. 139, 142, the court said:

"It has long been the established doctrine that, when an offense is charged to have been committed in one way, it is error for the court, over the defendant's objections, to authorize the jury to convict, if the evidence shows that he violated the statute in some other way not charged in the indictment or information."

In the case of *People* v. *Hubbard,* 141 Mich. 96, 104 N. W. 386, it was held that an information in the language of the statute which charged that the respondent "did knowingly and willfully resist, oppose, assault, and beat * * *, he, the said * * *, being then and there a person authorized by law to maintain and preserve the peace, to wit, a deputy sheriff of said county of * * *, and he the said * * *, being then and there engaged as such deputy sheriff in his lawful acts, attempts, and efforts to maintain, preserve, and keep the peace," charged no offense and contained no allegations as to what such lawful performance of his duty was.

The court in the last-mentioned case said:

"No cases are found by us or called to our attention, in prosecutions for resisting an officer in the execution of process lawfully issued, where it has been held not necessary to set forth specifically in the information the nature of the process and the doings of the officer under it at the time of the resistance."

We are of the opinion that unless the proof offered supports the allegations of the information that the defendant obstructed the officers then and there engaged in her lawful arrest, the defendant must prevail.

The uncontradicted evidence is that the officers went to the home of the defendant for the purpose of making a search for liquor. The testimony discloses that the defendant did offer stubborn resistance to prevent the officers from obtaining possession of liquor. There is no evidence that the officers had a warrant for the arrest of the defendant. There is no testimony in the record to show that the officers or any of them had any intention of arresting the defendant. The evidence does show that Mr. Larsen, at the request of Mr. Callicott, took the defendant from the bathroom. But there is no evidence that any officer ever informed or advised the defendant that she was under arrest or that her removal from the bathroom was intended as such. Unless the act of Mr. Larsen, in taking the defendant by the wrist and taking her into the kitchen, constituted an arrest, there is no record of any arrest or attempted arrest of the defendant. Comp. Laws Utah 1917, §§ 8712, 8713, and 8719, provide:

Section 8712.

"An arrest is taking a person into custody in a case and in the manner authorized by law. * * *"

Section 8713.

"An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of an officer. * * *"

Section 8719.

"The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the person to be arrested is actually engaged in the commission of or an attempt to commit an offense, or is pursued immediately after its commission, or after an escape."

We are unable to subscribe to the proposition that under the circumstances of this case the bare act of taking the defendant by the wrist and taking her into the kitchen constituted an arrest or an attempt to arrest. It appears rather that the officer had the intention only of removing her from the scene of the search and to prevent her interference. Notice of arrest should be given, either expressly or by implication, and without such notice no amount of physical restraint can constitute an arrest. 1 Wharton, Criminal Procedure, § 22. The act relied upon as constituting an arrest must have been performed with the intent to effect an arrest and must have been so understood by the person sought to be arrested. A forcible seizure of one's person, without any pretense of taking him into legal custody, does not amount to an arrest. 2 R. C. L. 446.

In the case of *State* v. *District Court*, 70 Mont. 378, 225 P. 1000, 1001, the court said:

"To constitute an 'arrest,' four requisites are involved: A purpose to take the person into the custody of the law; under a real or pretended authority; an actual or constructive seizure or detention of his person; so understood by the person arrested."

We are of the opinion that an arrest cannot be made without the presence of an intention on the part of the arresting officer to make the arrest. The primary requisite in making an arrest must be the intention on the part of the arresting officer to make an arrest.

The statement of the officer leads us to the conclusion that there was no intention of arresting the defendant. "I

said that she had better behave and told her we didn't want to have any trouble, we didn't come down there to fight"; and the further testimony of Mr. Callicott that Mr. Savage said, "Oh, for God's sake, we don't want any trouble." The statements of the officers negative any intent to arrest the defendant. Had they intended to arrest her, ample opportunity was afforded to so advise her. Until that was done (expressly or by appropriate implication) she could not be charged with resisting an arrest that she did not know was being made.

It is urged by the state that it was the duty of the officers, after finding intoxicating liquor in the possession of the defendant, to arrest her, and that it must be presumed and assumed that they intended to do their duty and did perform that duty by arresting the defendant. It is only necessary to observe that there is no testimony whatsoever that any intoxicating liquor was found in the home of the defendant. It does appear that the defendant was seen destroying what the witnesses declared to be liquor, but no evidence was offered that it was intoxicating. Nor can we concede that the officers were authorized to make the arrest without informing the defendant, for the reason that she was committing a public offense in resisting a lawful search. She was not advised that the officers were there under any lawful search warrant. The evidence discloses that Savage took the search warrant out of his pocket but said nothing to the defendant about it. The evidence does not disclose that the search warrant was exhibited to the defendant, nor was she advised that the officers inside her house were there under authority of any valid search warrant. If the state relied upon her resistance to a lawful search of her premises, evidence should have been introduced to show that defendant knew that the officers were making a lawful search under authority of a valid search warrant.

It follows that the conviction and judgment in this case must be reversed and the cause remanded for a new trial.

Since a new trial is granted we deem it necessary to refer to defendant's other assignments of error. The defendant requested the court to instruct the jury "that even though you should find from the evidence that the defendant obstructed the officers while they were searching for and taking liquor from the house, still if you should also find that the officers did not go to the house for the purpose of arresting the defendant, or did not attempt to arrest her while there, and did no act evidencing an intention to arrest her, then you must find the issues in favor of the defendant and return a verdict of not guilty." The court refused to give such instruction, to which ruling defendant excepted. Defendant thereupon requested the court to charge the jury that before they could find the defendant guilty the state would have to prove beyond a reasonable doubt that at the time of the alleged resistance, if any was made, that the deputy sheriffs of Salt Lake county named in the information were there in the discharge of their duty as such deputy sheriffs for the purpose of and were engaged in lawfully arresting said defendant as charged in the information, and unless they should so find it would then be their duty to return a verdict of not guilty.

The defendant assigns the refusal to give her requested instructions as error. The court instructed the jury in instruction No. 4 as follows:

"In order that you may convict the defendant you must be satisfied beyond a reasonable doubt, first, that Van Savage, Tom Callicott and Thomas Williams were officers, that is, duly qualified deputy sheriffs of Salt Lake County, Utah. Second, that the defendant knew that they were officers, and, third, that knowing that they were officers she resisted them, or obstructed them in the performance of their duties, and that such resistance or obstruction was wilful and unlawful and knowingly."

Instruction No. 5 given by the court reads:

"You are instructed that under the laws of the State of Utah if a person unlawfully resists, delays or obstructs any public officer in

the discharge of his duty, or in an attempt to discharge his duty, is guilty of a public offense."

The other instructions given are such as are usually given in a criminal case and in no wise refer to the material elements of the offense. By instructing in the language of the statute, what constitutes resistance and obstruction to an officer in instruction No. 5, and by omitting from instruction No. 4 the element of resistance to arrest as a material element necessary to be found before the defendant could be convicted, the jury may well have concluded that it was not necessary to find that the defendant offered resistance to lawful arrest and that all that was necessary in order to find the defendant guilty was to find that she resisted the officers or obstructed them in the performance of their duties after finding other material elements as set out in instruction No. 5.

It necessarily follows, from what we have said in this opinion, that the defendant's resistance to lawful arrest was a material element to be established by the state before the defendant could be found guilty of the offense charged in the information. The court should have instructed the jury upon this element by appropriate instruction, either as requested by the defendant or by such modification as would have fairly submitted the issue of resistance of the officers for the jury.

We are therefore of the opinion that the judgment must be, and it accordingly is, reversed and the case remanded for a new trial.

STRAUP, ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J., did not participate herein.