[No. 31079. Department Two. May 13, 1950.]

THE STATE OF WASHINGTON, *Respondent,* v. LEE RAYMOND
GOEBEL, *Appellant.*[1]

[1]Reported in 218 P. (2d) 300.

*J. Edmund Quigley* and *John W. Croome,* for appellant.

*Charles O. Carroll* and *Kathreen Mechem,* for respondent.

HILL, J.—Lee Raymond Goebel was convicted of committing rape and sodomy on a young woman hereinafter called A, on the 8th day of February, 1949 (counts I and II of the information), and of committing rape and sodomy on another young woman, hereinafter called B, on the 29th day of March, 1949 (counts III and IV of the information).

There is no contention that the evidence is not sufficient to sustain the verdict of the jury and the judgment entered thereon. Several difficult questions are posed, however, as the result of the admission of exhibit No. 17, a confession by the defendant of an entirely unrelated assault, or attempted rape, on a third young woman, hereinafter called C, on the 29th day of March, 1949, shortly before the commission of the rape and sodomy on that date of which he was convicted.

This court, in common with all others, has held that a defendant must be tried for the offenses charged in the indictment or information, and that to introduce evidence of unrelated crimes is grossly and erroneously prejudicial. *State v. Thompson,* 14 Wash. 285, 44 Pac. 533; *State v. Gottfreedson,* 24 Wash. 398, 64 Pac. 523; *State v. Gaines,* 144 Wash. 446, 258 Pac. 508; *State v. O'Donnell,* 195 Wash. 471, 81 P. (2d) 509; *State v. Richardson,* 197 Wash. 157, 84 P. (2d) 699; *State v. Barton,* 198 Wash. 268, 88 P. (2d) 385; *State v. Anderson,* 10 Wn. (2d) 167, 116 P. (2d) 346; *State v. Kritzer,* 21 Wn. (2d) 710, 152 P. (2d) 967; *State v. Brown,* 31 Wn. (2d) 475; 197 P. (2d) 590, 202 P. (2d) 461. Such evidence may be entirely lacking in probative value and be no more than a "piece of damning prejudice," in which case

the reason and necessity for its exclusion is apparent. To the extent that an unrelated crime can be relevant and have probative value, its exclusion is based on the policy of avoiding undue prejudice.

Certain exceptions have developed to the rule of exclusion. Textwriters such as Nichols, Wharton and Wigmore, and cases too numerous to mention, list the same five exceptions, some taking the position, with Nichols, that

". . . the exceptions to the general rule 'are carefully limited and guarded by the courts, and their number should not be increased' . . ." (4 Nichols Applied Evidence 3424, § 2);

while other authorities take the position that the exceptions cannot be enumerated categorically and that the five exceptions named are merely classifications into which most cases fall. These exceptions are to show (1) motive, (2) intent, (3) the absence of accident or mistake, (4) a common scheme or plan, or (5) identity.

In the present case, the appellant testified that his route of going to the restaurant where he met B on the night of March 29, 1949, was up Fourth avenue to Madison street, thence east on Madison to the place where he parked his car, thence to the restaurant. Under the guise of impeachment, the deputy prosecutor on cross-examination questioned him regarding a signed statement, admitted in evidence as exhibit No. 17, wherein he had stated that he went up Third avenue to Union and there accosted C, and that he took her in his truck east on Union, ultimately arriving at a parking lot at Eighth and Seneca, where he attempted to have intercourse with her against her will but she managed to open the truck door and escape.

The trial court overruled strenuous objections by the attorney for the defendant that this was evidence of an independent and unrelated crime. The attorney later moved to strike it on the ground that it constituted impeachment on a collateral matter, and that motion likewise was denied.

It is evident that the impeachment was on a purely collateral and immaterial matter. The state was not concerned with the route the appellant followed when ap-

proaching the restaurant where he met B on the night in question, or what he had been doing prior to his arrival there. The evidence clearly should not have been admitted on the basis of the reason suggested by the state for its admission and adopted by the trial court, *i.e.*, impeachment. *People v. DeGarmo,* 179 N. Y. 130, 71 N. E. 736. Our own cases on this point are reviewed in *Warren v. Hynes,* 4 Wn. (2d) 128, 102 P. (2d) 691. In an effort to remedy the situation, the trial court gave the following instruction:

"State's Exhibit No. 17 was admitted into evidence by the court for a strictly limited purpose, namely, for whatever bearing it may have, if any, in impeaching the testimony of the defendant regarding his movements and activities on the night in question.

"If you find that it contains evidence of the commission of any other crime or crimes by the defendant, you will totally disregard that fact. You are instructed that the defendant is on trial only for the offenses set out in the four counts of the information, and you are admonished not to consider any other offenses which may have been referred to in the evidence in determining his guilt or innocence of the crimes charged in the information.

"A defendant is entitled to be tried on the counts set out in the information. It is entirely immaterial what other offenses, if any, he may have committed."

The defendant testified in his own behalf, admitted the commencement of sexual intercourse with A and the completion thereof with B, denied sodomy on A, and denied having knowingly committed sodomy on B; he also denied the use of any force or threats. His defense rested entirely upon his credibility. Exhibit No. 17 was admitted in evidence on the theory of impeachment and the jury was instructed that it was admitted into evidence

". . . for whatever bearing it may have, if any, in impeaching the testimony of the defendant regarding his movements and activities on the night in question."

The jury was also instructed:

". . . If you do believe that any witness has wilfully testified falsely to any material matter, then you are at

liberty to disregard the testimony of such witness entirely, except insofar as the same may be corroborated by other credible evidence in the case."

■ While correct in itself, the latter statement, when coupled with the erroneous statement of the ground for the admissibility of exhibit No. 17, leaves the instructions as a whole subject to the fundamental vice that the jury was directed that they could disregard the testimony of the defendant entirely if they believed (as they must have) that he had lied on the collateral matter of the route he had taken to the restaurant where he met B.

True, the instruction says they could disregard the testimony of a witness who testified falsely on a material matter, and we have just said that the impeachment was on an immaterial matter. However, the fact that exhibit No. 17 was made the subject of a special instruction must have left the jury with the impression that the subject of his impeachment was material. Our rules of evidence are framed for ordinary minds, not logicians, and distinctions which in the heat and pressure of a trial may escape the trained mind of a trial judge, are too subtle to be imputed to a jury. We have just paraphrased what Mr. Justice Cardozo said in a case hereinafter discussed in some detail:

"Discrimination so subtle is a feat beyond the compass of ordinary minds. The reverberating clang of those accusatory words would drown all weaker sounds. It is for ordinary minds, and not for psychoanalysts, that our rules of evidence are framed. They have their source very often in considerations of administrative convenience, of practical expediency, and not in rules of logic. When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out." *Shepard v. United States*, 290 U. S. 96, 78 L. Ed. 196, 54 S. Ct. 22.

The case of *People v. Rosenthal*, 289 N. Y. 482, 46 N. E. (2d) 895, is squarely in point and decisive of the case. Rosenthal was charged with kidnapping a boy of sixteen years of age, and of committing upon him the crimes of sodomy and assault in the second degree. The district attorney, after obtaining from the defendant on cross-

examination a denial of various transactions with certain other boys, was permitted, over objection, to contradict the defendant by the testimony of the other boys. The trial judge charged that the effect of this testimony must be limited to the credibility of the defendant.

In reversing the judgment of conviction, the New York court of appeals pointed out that the defendant had testified in his own behalf and contradicted the testimony of the complaining witness, upon which conviction must necessarily have been predicated, and that his credibility was a vital factor in his defense. After discussing the cross-examination and the rebuttal testimony of the other boys, the appellate court said:

"The theory of the court was that he allowed the cross-examination and admitted the testimony on rebuttal solely on the question of the credibility of the defendant. The subjects of the cross-examination and the rebuttal testimony related to matters collateral to the issue in this case. The court charged the jury that they must not consider the evidence as any evidence of the commission by the defendant of any other crimes but that he (the court) had limited the effect of the testimony to the question of the credibility of the defendant, to the question of whether or not he would be truthful in his denial of the transactions that the boy alleged occurred at defendant's residence, to which charge the defendant excepted. The court coupled with that the further charge that if the jury believed that any witness, defendant or otherwise, intentionally testified falsely to any material fact, the jury had a right, but they were not required to, but had the right to disregard the entire testimony. Such a charge, standing alone, was correct. But, coupled as it was with the erroneous statement of the grounds of the admissibility and materiality of the cross-examination and rebuttal testimony, the jury were bound to conclude that they might find defendant's whole testimony incredible if they believed he lied on his cross-examination by the prosecutor and that the witnesses called in rebuttal on the collateral matters told the truth. The prosecutor was bound by the answers on those subjects given by defendant on cross-examination."

There is nothing in the record in the present case, as we view it, that is more damning than this signed statement of

the appellant. He could deny the statements of the prosecuting witnesses, each of whom had been willing to accept a ride in a truck with a stranger at an early hour of the morning, and it would become a question of veracity; but exhibit No. 17, a statement over his own signature, bore with deadly effect upon the character and disposition of the defendant. If it should not have been admitted for the purpose of affecting his credibility, the defendant was grossly prejudiced, because no instruction could muffle its accusatory clangor.

The state on this appeal makes but slight attempt to justify the admission of this statement on the ground of impeachment. It now takes the position that the evidence was admissible (1) to rebut the defensive theory, and (2) for the purpose of showing the plan, scheme or bent of mind of the defendant, and relies heavily on an exception to the general rule for the exclusion of evidence of unrelated crimes, as stated in 167 A. L. R. 565, 594, that:

"Evidence of the prior rape of, or assault upon, another woman has been held to be admissible for purposes of identification, or of showing the plan, scheme, or bent of mind of the defendant in a prosecution for forcible rape."

There may be merit in the state's contention that the evidence was admissible for the purposes indicated, and we assume, without deciding, the correctness of that contention. (We would suggest, parenthetically and purely *obiter*, that our investigation has indicated that, while reference is made in some cases to rebutting the defensive theory, it will be found that in practically every case the evidence was admissible under one or more of the five generally recognized exceptions to the rule of exclusion. We would suggest, likewise parenthetically, that if exhibit No. 17 was admissible as proof of the lustful disposition of the defendant on March 29, 1949, the night of the alleged rape of B, no attempt was made to limit its applicability to counts III and IV.) However, the state's present justification for the admission of exhibit No. 17 is raised for the first time in this court. We have for consideration, therefore, the question: In a criminal case, will the state be permitted to justify,

in an appellate court, on a proper theory advanced for the first time in that court, the admission for a limited purpose of evidence damaging to a defendant (such as evidence of an unrelated crime), when such damaging evidence was admitted in the lower court on an erroneous theory for a different and limited purpose?

We have found, despite an extensive and intensive survey, relatively few cases which deal with the question with which we are here concerned, and we will discuss them briefly. We should, perhaps, again emphasize the restricted character of the question by pointing out that it is limited to criminal cases (thus excluding such cases as *Raborn v. Hayton,* 34 Wn. (2d) 105, 208 P. (2d) 133) and that we are dealing with evidence of unrelated crimes admitted only for a limited purpose or purposes, which carries with it the recognized danger of undue prejudice.

Peculiarly, the late Mr. Justice Cardozo wrote two of the opinions dealing with our problem, one as chief justice of the New York court of appeals (*People v. Zackowitz,* 254 N. Y. 192, 172 N. E. 466) and the other as a justice of the United States supreme court (*Shepard v. United States, supra.*)

In the first case, Zackowitz had been convicted of murder. That he had shot and killed a man in a street quarrel was admitted, and the most important issue was whether there had been premeditation. In the lower court, the prosecution had been permitted to prove that, at the time of his arrest, Zackowitz had in his apartment three pistols and a tear-gas gun. The purpose, stated in the words of the appellate court, was

". . . to bring persuasion that here was a man of vicious and dangerous propensities, who because of those propensities was more likely to kill with deliberate and premeditated design than a man of irreproachable life and amiable manners."

The court of appeals held that the evidence was inadmissible for that purpose; and then, to the prosecution's contention that, since the defendant had testified on cross-examination that he had no license for a pistol, the prosecu-

tor was at liberty to prove the possession of the weapons in an attempt to impeach his credibility, since possession without a license was a felony, Judge Cardozo, speaking for the court, replied:

" . . . All this may be true, but the evidence was not offered or admitted with such an end in view. . . . Even more plainly is it a perversion to call out evidence for an avowed object manifestly illegal, and use it later on appeal as if admitted at another stage in aid of another purpose innocent and lawful."

The conviction was reversed because the evidence, though possibly admissible for another purpose, was not admissible for the purpose for which it had been offered and received.

In the second case, *Shepard v. United States*, 290 U. S. 96, 78 L. Ed. 196, 54 S. Ct. 22, an army surgeon was charged with having poisoned his wife. During her last illness the wife had said, on May 22nd, "Dr. Shepard has poisoned me." At that time she seemed on the road to recovery. A week later there was a relapse, and death followed on June 15th. At the trial, the statement, "Dr. Shepard has poisoned me," was erroneously admitted as a dying declaration. It was argued on appeal that, the defense having suggested the possibility of suicide, the statement was admissible as evidence of a state of mind inconsistent with suicide. It was conceded, the opinion said,

" . . . in all candor that Mrs. Shepard's accusation of her husband, when it was finally let in, was received upon the footing of a dying declaration, and not merely as indicative of the persistence of a will to live. . . . The testimony was received by the trial judge and offered by the Government with the plain understanding that it was to be used for an illegitimate purpose, gravely prejudicial. A trial becomes unfair if testimony thus accepted may be used in an appellate court as though admitted for a different purpose, unavowed and unsuspected."

Here, also, the conviction was reversed. (The evidence under consideration in that case was not of an unrelated crime, but it would ordinarily have been excluded under the hearsay rule.)

A comparatively recent case (February 11, 1948) is *United States v. Klass,* 166 F. (2d) 373, in which the defendants were charged with having sold a house for $10,500, or $1,500 more than the maximum sale price. The defendants, asked concerning sales of other houses, admitted the sales but denied that they had received any amounts in excess of the maximum sale prices. The government called in rebuttal purchasers of several other houses, who testified to having paid the defendants more than the maximum sale prices. The trial court admitted the evidence of the other sales on the theory that it went to the issue of intent and wilfullness, and it was so limited by the judge in his charge to the jury. The circuit court of appeals, third circuit, said that intent was not in issue and that the sole question was whether the house had sold for $9,000 or $10,500. The court then said:

"The government further seeks the admission of the rebuttal evidence on the theory that it comes within another exception to the general rule of exclusion, that is, it relates to scheme or plan. Plainly this is an after-thought, urged for the first time on this appeal. The court below did not pass upon the efficacy of the evidence, nor was the jury instructed as to its use, in this respect. See *Hubby v. United States,* 5 Cir., 1945, 150 F. 2d 165, 168; *Martin v. United States, supra* [75 U. S. App. D. C. 399, 127 F. 2d 865]. . . .

"Here we are dealing with evidence the nature of which has been long recognized as dangerous, in this court as well as others, from the point of view of trial procedure and fairness. It is never admitted unless its use is closely circumscribed, the ultimate objective being to cut away insofar as possible its otherwise harmful effects."

Another Federal case is *Martin v. United States,* 127 F. (2d) 865. A policeman was charged with assault. The government introduced evidence that the defendant had assaulted the complaining witness at about eleven p. m. on a certain day. The defendant testified that he had been walking his beat and that nothing out of the ordinary had happened that evening. On cross-examination, he was asked a series of questions as to whether he had had any "diffi-

culties" (five in number) with other named people at several specific places at approximately the hour referred to. Objection to this line of questioning was overruled, and defendant denied having had any "difficulty" with any of the five named people. The government then called witnesses to refute two of the defendant's denials. Again the defendant objected, but the witnesses were permitted to describe two other assaults by the defendant the same evening. The government, when asked to state its grounds for the admissibility of the evidence, argued that the cross-examination and rebuttal were proper as affecting the credibility of defendant's account, *i.e.*, impeachment through specific contradiction.

The appellate court, after pointing out that the government had ventured too far afield and brought out far more graphic details than were necessary to refute the defendant's answer of "no difficulty," provided impeachment were the sole purpose, said that it was not necessary to pass upon the admissibility of the evidence under the impeachment theory, as the government had conceded that it was not admissible for that purpose and, on appeal, contended that it was admissible to prove identity, since the defendant denied having assaulted the complaining witness. The court said:

"In respect of the rebuttal testimony, we point out that, although there is a rule of evidence dealing with multiple admissibility, in criminal cases when the evidence has a limited purpose the jury is, as a rule, carefully instructed so that they will know the precise issues upon which the evidence can be considered. Such care will avoid confusion and will prevent as much as is possible the evidence going to the general question of guilt. The record does not show any charge or instruction concerning the use of the rebuttal evidence upon, or only upon, the question of identity. It is probable there was none, since that was not the purpose for which the evidence was offered. . . .

"Thus, if the Government at the trial had said that the rebuttal evidence would be for the purpose of identification, the trial court might very well have excluded it. The trial court might have taken this view because it regarded the evidence as of low probative value on identification, or because the Government already had in strong positive evi-

dence on this issue, or because, if that was its purpose, it should have come in with the Government's case in chief rather than having a tactical advantage just before the jury started its deliberations."

In a very able concurring opinion, Judge Stephens pointed out another reason for reversal, namely, that if the evidence was admissible for the reason contended by the government on the appeal, it ought to have been admitted only under proper cautionary instruction as to the purpose for which it might be considered.

 From these cases, the answer to the question and the reasons for it are clear. The state will not be permitted to secure the admission of evidence of another, unrelated crime for the purpose of impeachment, as it did here, when it is not admissible for that purpose, and then justify its admission on other and proper grounds, suggested for the first time in the appellate court. (We again desire to make it clear that we are assuming but not deciding that exhibit No. 17 would have been admissible for at least one of the purposes now urged by the state. Two law review articles are valuable in connection with the issue of admissibility, 46 Harv. L. Rev. 954 and 51 Harv. L. Rev. 988.)

It is our view that this matter of the admission of evidence of independent and unrelated crimes, placing a defendant, as it virtually does, on trial for offenses with which he is not charged, and which may well be better calculated to inflame the passions of the jurors than to persuade their judgment, should be surrounded with definite safeguards. When it becomes apparent that certain evidence tends to prove an independent and unrelated offense, the trial judge, in the absence of the jury, should ascertain upon what basis of relevancy the state relies. If the evidence offered is shown to be relevant to any material issue before the jury, it *may* be admitted, and, if it is, an explanation should be made at the time to the jury of the purpose for which it is admitted. (The reason for its admission will generally be found within the five generally recognized exceptions to the rule of exclusion, but we are not prepared to say that they are exclusive.) The court, in arriving at its decision as to

the admissiblity of the evidence, is of course not limited to the reasons given by the state; but the court should state to the jury whatever it determines is the purpose (or purposes) for which the evidence is admissible; and it should also be the court's duty to give the cautionary instruction that such evidence is to be considered for no other purpose or purposes.

■ We have intentionally used the phrase "may be admitted" because we are of the opinion that this class of evidence, where not essential to the establishment of the state's case, should not be admitted, even though falling within the generally recognized exceptions to the rule of exclusion, when the trial court is convinced that its effect would be to generate heat instead of diffusing light, or, as is said in one of the law review articles above referred to, where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it. This is a situation where the policy of protecting a defendant from undue prejudice conflicts with the rule of logical relevance, and a proper determination as to which should prevail rests in the sound discretion of the trial court, and not merely on whether the evidence comes within certain categories which constitute exceptions to the rule of exclusion. We repeat again a particularly apropos statement from *Shepard v. United States, supra,* referring to the rules of evidence: "When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out."

The appellant also urges as error that, on four occasions, it was brought to the attention of the jury that the police department had the appellant's picture in its records and used it for purposes of identification. The witnesses who were responsible were two detectives and a detective sergeant (twice).

The state urges that the questions asked by the deputy prosecutor were entirely proper and negate any effort to elicit answers regarding such pictures. That is true, although one witness had clearly telegraphed his intention to inject a reference to pictures into the case, and noth-

ing was done to avert it. We indicated in *State v. Devlin,* 145 Wash. 44, 258 Pac. 826, that prosecutors and deputy prosecutors have some affirmative duty to see that an accused receives a fair trial. However, since the cause must be retried, we will not determine whether the error was cured, or whether it was in fact prejudicial; we are interested only in making clear that it should not happen again. If we assume that it was ignorance of trial procedure and the rules of evidence, and not a desire to inject a bit of "damning prejudice," that caused each of the three officers to refer to the pictures of the appellant, it would seem the prosecutor should call *State v. Devlin, supra,* to their attention before they testify again.

We dislike to send this case back for a new trial, for if the evidence of the prosecuting witnesses, together with the defendant's own signed statement, is to be believed, to describe him as a beast is to libel the entire animal kingdom. Nevertheless, he was entitled to a fair trial, and that he did not have when evidence of a highly inflammatory character, proving an independent and unrelated crime, was admitted for the purpose of impeaching him on a purely collateral matter.

It may be that, on a new trial, exhibit No. 17 or the testimony of C will be admitted on one or more of the grounds now urged by the state. If so, and in so far as it is a part of the state's case in chief, it should not be withheld until rebuttal; the defendant should be correctly advised of the purpose of its admission; and the necessary cautionary instructions should be given.

The cause is reversed and remanded, with directions to the superior court to set aside the verdict and judgment on all counts, and to grant a new trial.

SIMPSON, C. J., ROBINSON, MALLERY, and HAMLEY, JJ., concur.

June 16, 1950. Petition for rehearing denied.