[No. 16-40243-2. Division Two. December 18, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. JERRY CURTIS SKINNER, *Appellant.*

*Henderson, Connelly & Godderis,* and *Ellsworth I. Connelly,* for appellant.

*Ronald L. Hendry, Prosecuting Attorney* and *Joseph D. Mladinov, Special Counsel, Eugene G. Olson, Chief Criminal Deputy,* for respondent.

ARMSTRONG, C. J.—This is an appeal by defendant Jerry Curtis Skinner from a jury conviction of two counts of assault in the second degree. Defendant had entered a plea of not guilty by reason of insanity.

On the night of July 23, 1967, at about 11 p.m., the defendant, accompanied by his uncle's wife (whom we will refer to as his aunt), knocked on the door of the Tacoma suburban residence of Paul and Sandra Quackenbush. The Quackenbushes were sleeping and were awakened by the knocking. Mr. Quackenbush went to the door. The defendant had a pistol in his hand and asked Mr. Quackenbush several times to call a taxi for him. The defendant asked that the porch light be turned off. Mr. Quackenbush turned off the light and closed and locked the door. He reopened the door to let his dog in, and the defendant and his aunt also entered.

While in the house the defendant kept his pistol in his hand "waving it around." He expressed concern that he was being pursued and kept watch at the window. Mrs. Quackenbush was up by this time and defendant waved his pistol around in her presence.

George Homewood, a neighbor of the Quackenbushes, knocked at the door which was opened by defendant. After he was identified by Mr. Quackenbush the defendant allowed him to enter.

The defendant directed Mr. Homewood and Mr. and Mrs. Quackenbush to stay in the rear of the house as there might be some shooting. The defendant then used the telephone to call an unidentified attorney and informed him that he was being pursued and that there might be some shooting.

Both Mr. Quackenbush and Mr. Homewood had opportunity to observe the defendant. Neither thought him drunk, his speech was coherent, they did not detect the

odor of alcohol about him, and he seemed to know what he was doing. Defendant and his aunt had been drinking for hours.

A taxi arrived and the defendant and his aunt left the Quackenbush residence to go to a nearby restaurant. At the restaurant the defendant telephoned a lady friend and secured other transportation. The taxi driver was left unpaid and with the aunt on his hands. He returned to the area of the Quackenbush residence where he encountered deputy sheriffs who had been called by the Quackenbushes.

The deputy sheriffs arrested the defendant's aunt for intoxication. On their way to the police station they saw the defendant riding in a car operated by his lady friend. They stopped the car and arrested defendant. During the arrest defendant drew his pistol and pointed it at Deputy Sheriff Donald Dale. The defendant was arrested and taken to the Pierce County jail. After approximately 3 months in jail he cut a vein in his elbow. On October 13, 1967, he was taken to Western State Hospital. He remained there for observation and diagnosis until January 12, 1968.

Defendant makes four assignments of error concerning essentially two issues. Defendant contends that it was error for the trial court to deny his motion for a new trial after the prosecutor asked two jurors, on voir dire, if they had personal knowledge of the case and referred to a newspaper article which mentioned a woman being thrown over a fence. Defendant contends that mention of the uncharged assault on voir dire was prejudicial error which was compounded when the trial court allowed the aunt to testify relative to an assault upon herself.

Defendant argues the above two assignments of error together and relies on *State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950), and *State v. Hall,* 41 Wn.2d 446, 249 P.2d 769 (1952), which state the rule that defendant must be tried only for the offenses charged in the information and that generally evidence of the commission of crimes other than those charged constitutes prejudicial error requiring the granting of a new trial.

■ We do not disagree with the general rule stated in *Goebel* and *Hall,* but we note that both cases recognize exceptions which allow admission of offenses other than those charged. The recognized exception in this instance relates to evidence which shows the state of mind of defendant if his state of mind becomes an issue in the case. In the case at bar it became an issue when defendant asserted a defense of insanity. As pointed out in *State v. Davis,* 6 Wn.2d 696, 108 P.2d 641 (1940), evidence which is competent, relevant and material will not be excluded even though it may tend to show that defendant committed some other crime.

With reference to the statements of the prosecutor on voir dire relative to an uncharged assault, we find that he was questioning prospective jurors to determine if they had knowledge of a somewhat sensationalized newspaper account of the events here under consideration. We do not see any indication of bad faith on the part of the prosecutor in the record. The record also shows that there was no repetition of this line of questioning after it was terminated by the court. The record contains testimony of George Homewood on the assault mentioned by the prosecutor. There was no objection by defendant to this testimony.

■ The trial court's denial of defendant's motion for a mistrial under the above circumstances was properly decided as a matter within its discretion. As stated in *State v. Bromley,* 72 Wn.2d 150, 157-58, 432 P.2d 568 (1967): "The trial court must be allowed considerable latitude in the exercise of a sound discretion in determining questions which may be asked on voir dire." We see no abuse of that discretion in this case.

We find no merit to the second assignment of error which challenges the trial court allowing the defendant's aunt to testify relative to an assault committed by defendant upon herself—an assault not charged in the information. In reviewing the record, we do not find the objectionable testimony which defendant challenges. There is no direct testimony by defendant's aunt to an assault upon herself al-

though Mr. Homewood testified to such an assault. At several points there is testimony that she was afraid. At only one point was she pinned down as to her fear and she testified that she was afraid that he was going to shoot the Quackenbushes—an assault charged in the information.

Defendant's behavior toward his aunt and his actions preceding the assaults charged are relevant to show his state of mind as it developed over the evening in question. The defendant had been drinking heavily and his aggressive tendencies when he was drinking were brought out by his aunt's testimony. This testimony is admissible because of the defense of insanity to show the defendant's state of mind.

In *State v. Odell*, 38 Wn.2d 4, 227 P.2d 710 (1951), the court held that when the defense of insanity is asserted, every act of the defendant's life relevant to the issue is admissible in evidence. In the case at bar the aunt testified to his behavior on the evening in question, the preceding afternoon, and his general behavior and mental state while drinking. The testimony is relevant and admissible under the Odell rule.

The third assignment of error concerns the trial court refusing to give defendant's instruction to the effect that if it is within the power of the state to produce stronger evidence than that which it offered on defendant's mental condition, the jury should distrust any weaker evidence actually offered by the state. The fourth assignment of error goes to essentially the same point and challenges the trial court's denial of defendant's motion for a new trial on the ground that the state offered no evidence contradicting defendant's evidence as to his insanity at the time of the commission of the acts charged. Defendant argues his third and fourth assignments of error in the aggregate. The thrust of the argument is that the state had subpoenaed Dr. Harlan McNutt, a Tacoma psychiatrist, but did not call him to refute the medical opinion of the psychiatrist who testified on behalf of defendant.

Although defense witness Dr. Karl Humiston, a psychia-

trist at Western State Hospital, saw no signs of a psychosis during his first interview with defendant, he later came to the conclusion that defendant "must have been out of his head to do what he was charged with having done." On the basis of history and psychological testing he diagnosed him as having a schizophrenic psychosis, which does not, by itself, determine the extent of his mental responsibility. Considering the diagnosis and the unusual nature of defendant's acts, the doctor expressed the opinion that at the time of the crime he was not able to know the nature of his acts. It is significant that Dr. Humiston also found that defendant was manipulative and had a superior intelligence. The record discloses no history of treatment for mental illness before the occasion in question, but does reveal marital difficulties and drinking problems. At the time of trial Dr. Humiston found him improved and competent to stand trial and assist in his defense.

Defendant relies on *State v. Davis,* 73 Wn.2d 271, 276, 438 P.2d 185 (1968), to support his contention that the trial court erred in failing to give his requested instruction in relation to the state's power to produce stronger evidence, which he equates with the missing witness rule. Citing 29 Am. Jr. 2d *Evidence* § 178 (1967), *Davis* states the missing witness rule as follows:

> ". . . it has become a well established rule that where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation, he fails to do so,—the jury may draw an inference that it would be unfavorable to him. . . ."

The instant case involves a physician who had been appointed by the court. The pertinent sections of the court's order appointing him dated January 17 are:

[I]t is hereby,

Ordered, Adjudged and Decreed that Harlan P. McNutt, M.D., be, and he is hereby authorized and directed to examine Jerry Curtis Skinner for the purpose of determining if said individual is mentally capable of assist-

ing in his own defense in the above entitled action and further whether said defendant was, on July 23, 1967, insane as provided by R.C.W. 10.76.010, and it is further

Ordered, Adjudged and Decreed that all medical records, reports and results of examinations of Jerry Curtis Skinner in the custody of Western State Hospital be made available to Harlan P. McNutt, M.D., the Prosecuting Attorney and defense counsel herein, to assist said Doctor in his examination and evaluation of Jerry Curtis Skinner, and it finally

*Ordered that no statements relating to the crime with which defendant, Jerry Curtis Skinner is charged obtained from said defendant during the examination by Harlan P. McNutt, M.D., shall be used against the defendant in the trial of this matter.*

(Italics ours.)

The court's order denies the state the opportunity to present any statement which the court-appointed psychiatrist may have obtained with reference to the participation of defendant in the crime charged. Since Dr. McNutt would likely have no information about the defendant's mental capacity on July 23, 1967, except from statements he obtained from defendant in January, 1968, or statements gleaned from the hospital records which commenced October 13, 1967, it would not appear that the prosecutor could have called Dr. McNutt as a witness on the question of insanity at the time of the crime without violating the order of the court. It is obvious that it was unnecessary to call Dr. McNutt at the competency hearing because the highly qualified psychiatrist called by the defense had found defendant competent to stand trial. We do not see that the witness was under the control of or peculiarly available to the state. The missing witness rule is not applicable.

The fourth assignment of error challenges the trial court's denial of defendant's motion for a new trial for the reason that the state produced no evidence contradicting the defendant's psychiatric evidence as to his alleged insanity at the time of the commission of the offenses charged.

The defense called a psychologist and a psychiatrist. The psychologist did not express an opinion as to defendant's condition at the time of the crime, but did express an opinion that defendant was psychotic when she tested him at Western State Hospital on November 29, 1967.

The question was considered in *State v. Putzell*, 40 Wn.2d 174, 179, 242 P.2d 180 (1952). The Supreme Court held that the jury was not bound by the conclusions of doctors on the question of insanity and that

[t]he ultimate conclusion, and the ultimate decision as to the sanity or insanity of appellant, upon all of the evidence in the case, and the law, as given to it by the court, was the responsibility of the jury.

This is further buttressed by the per curiam holding of *State v. Johnson*, 67 Wn.2d 671, 409 P.2d 655 (1965), where the court stated that the jury is not obligated to accept psychiatric testimony as to insanity even where it is undisputed.

The final determination of defendant's mental capacity at the time of the crime rests with the jury who need not rely upon the psychiatric opinion presented by defendant. The state produced the victims of the assaults who testified as to the defendant's speech and actions. The jury could consider the evidence that he was found by his medical witness to be manipulative and of a superior intelligence, as well as the fact that there was no prior history of treatment for mental illness. His aunt testified that he was vicious when drinking. Reasonable minds could differ as to whether his actions at the time of the crime were the result of intoxication or insanity. Since the jury was properly instructed neither the trial court nor this court can substitute its judgment for the judgment of the jury.

The judgment is affirmed.

PEARSON and PETRIE, JJ., concur.