[Nos. 2017–2; 2022–2. Division Two. January 10, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. HAMMOND L. LEWIS, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES BLISS, *Appellant.*

36

*Jack L. Burtch* and *John M. Wolfe,* for appellants (appointed counsel for appeal).

*Curtis M. Janhunen, Prosecuting Attorney,* for respondent.

REED, J.—Defendants Hammond L. Lewis and Charles Bliss were charged with armed robbery of the Fairway Grocery and the Corner Cupboard Store in Grays Harbor, Washington. After separate jury trials, both men were convicted and sentenced to concurrent 20–year terms and are appealing their convictions. Because the underlying factual context is the same, and because Lewis and Bliss raise many of the same issues, their appeals have been consolidated. We are also concerned with a cross appeal filed by the State challenging the trial judge's refusal to sentence in accordance with RCW 9.41.025—the firearm statute. We affirm both convictions, but find the trial judge erred in ruling RCW 9.41.025 unconstitutional, and remand for resentencing pursuant to its terms.

At approximately 9:20 a.m. on Saturday, March 1, 1975, the Aberdeen police, directed by Detective Sergeant Larry McCluskey, executed a search warrant at 1017 West First Street in Aberdeen, the residence of defendant Lewis. The search warrant listed certain items allegedly taken from an automobile in Westport several weeks earlier. When the police arrived at the residence, Lewis was installing a tape

deck in a car parked in front of the house. The car was owned by Jeannie Brooks, a roommate of Lewis', and had been identified by an informant as the car used in the Westport larceny. Prior to executing the warrant, Officer Peter Czerniski removed Lewis from the car and brought him into the residence where he was handcuffed and taken with the other occupants of the house into a bedroom while the search was being conducted. When the search produced contraband, the occupants were formally arrested, given their *Miranda* warnings and taken to the Aberdeen police station. The police impounded two vehicles parked in front of the house, the Brooks' vehicle and a car owned by Louis Morgan, the estranged husband of Martha Morgan, who was another resident of the apartment. Lewis was initially booked for investigation of grand larceny (the Westport crime); after Bliss was arrested, the police also booked Lewis for the armed robberies.

That afternoon, Lewis was again given the *Miranda* warnings, and Officer McCluskey asked him if he wished to make a statement; he declined to do so. At approximately 8 p.m., Bliss was arrested based on statements made by Jeannie Brooks and Martha Morgan implicating him in the armed robberies. The *Miranda* warnings were administered and Bliss was taken to the police station, where he gave a full taped confession. Later in the evening, Officer David Timmons overheard a conversation between Lewis and Bliss in the cellblock during which both men made damaging statements.

The next morning, Sunday, March 2, the *Miranda* warnings were repeated and Lewis was asked if he wished to speak with Officer McCluskey. Lewis declined the invitation but asked permission to talk with Jeannie Brooks, who was also still in custody. He was permitted to do so and was overheard making several incriminating statements to her. After meeting with Brooks and being told Bliss had confessed, Lewis gave a detailed taped statement confessing to the armed robberies.

On Monday afternoon Lewis made inculpatory comments to other inmates during a lineup. Late that afternoon, both defendants were arraigned in justice court.

Lewis was tried on May 19 and 20; Bliss' trial was held June 16 through 19. Judge John H. Kirkwood presided at both trials and at the omnibus hearing. The jury found both men guilty and special verdicts were returned finding that they were armed at the time they committed the robberies. Judge Kirkwood ruled that RCW 9.41.025 was unconstitutional on equal protection grounds and refused to impose mandatory minimum sentences.

The defendants object to a variety of rulings made during the course of their trial and during the omnibus hearing. The State cross–appeals from Judge Kirkwood's ruling that RCW 9.41.025 is unconstitutional. Our discussion of the many assignments of error will be divide
main sections: (1) the admissibility of the confessions and other statements made while in custody; (2) the admissibility of physical evidence; (3) the propriety of miscellaneous rulings made in the course of the omnibus hearing and trial; (4) the State's cross appeal.

### Admissibility of the Confessions and Other Statements

Both defendants challenge the validity of their confessions on Fourth, Fifth and Sixth Amendment grounds. Lewis also challenges the admission of the statements he made to Brooks, Bliss and the other inmates participating in the lineup on a Fourth Amendment—fruit of the poisonous tree—theory.

Lewis first argues that he was arrested at the car without probable cause, and that therefore, all statements made by him are inadmissible as a product of the illegal arrest.

The basic link between the appellants' arrest and their confessions inheres in the simple fact that, *but for the one* the other could not have been obtained. The very presence of appellants in police custody to make their

statements was made possible only through the device of illegally arresting them.

(Italics ours.) *State v. Byers,* 88 Wn.2d 1, 8, 559 P.2d 1334, 1337 (1977). We disagree with Lewis' contention for two reasons. First, in contrast to the situation in *Byers,* the trial judge here found that Lewis was not "arrested" but merely "detained" by Officer Czerniski. There is substantial evidence to support this finding. At the CrR 3.5 hearing, there was testimony the officers knew Lewis and recognized Jeannie Brooks' car as the one connected with a car prowl and other crimes committed in Westport, Washington; they also suspected the occupants of the house about to be searched were armed robbers and, according to Officer McCluskey:

> We didn't want this subject [Lewis] outside of the residence. We believed that the subject was involved in several other felonies. He [Officer Czerniski] was instructed to bring him into the residence.

Under these circumstances, we think Lewis was not "arrested" but was merely temporarily and lawfully detained to preserve the status quo of the persons and property within the residence in order that the officers not be hindered in the execution of the search warrant and for the safety and protection of the officers. *Cf. State v. Howard,* 7 Wn. App. 668, 502 P.2d 1043 (1972); *State v. Beckendorf,* 79 Utah 360, 10 P.2d 1073 (1932). Even though Lewis was thereby "seized" in the technical sense of the Fourth Amendment's prohibitions, we do not view that seizure as being unreasonable in light of all the circumstances.

Second, even if it is assumed that Lewis was illegally arrested at the car, his confessions and statements were not *direct products* of that arrest. Lewis was "rearrested" formally in the house after the seizure of property pursuant to the search warrant. In addition, a number of other events intervened between the initial arrest and the confession; these include: (1) the repeated giving of the *Miranda* rights, (2) the passage of 24 hours or more between arrest and statement, (3) the fact Lewis was permitted to talk to

Jeannie Brooks, (4) the arrest of Bliss and his confession implicating Lewis, and (5) Lewis was informed of the Bliss confession. The instant case is therefore unlike *Byers* where

> There was no great lapse of time or noteworthy intervening event between the seizure and the statements, but only a short, continuous period of investigation and interrogation. There can thus be no basis for segregating the two, no justification for upholding the one while denouncing the other.

*State v. Byers, supra* at 9.

We note a number of cases upholding the admission of a confession made following a lawful arrest after an earlier illegal arrest. *Government of the Virgin Islands v. Gereau,* 502 F.2d 914, 925 (3d Cir. 1974); *Tasby v. United States,* 451 F.2d 394, (8th Cir. 1971), *cert. denied,* 406 U.S. 922, 32 L. Ed. 2d 122, 92 S. Ct. 1787 (1972); *Bowlen v. Scafati,* 395 F.2d 692 (1st Cir. 1968); *United States v. Contino,* 394 F. Supp. 607 (S.D.N.Y. 1975). In *Tasby v. United States, supra,* the defendant was arrested twice. For the purposes of discussion, the circuit court assumed that the first arrest was unlawful; the second arrest was clearly proper and with probable cause. Tasby attempted to have his confession, made after the second arrest, excluded as a fruit of the poisonous tree. The court disagreed, saying at page 398:

> Assuming, arguendo, the illegality of the first arrests, nothing of record suggests that any police conduct occurring after the first arrests induced the subsequent confessions made following the second, legally valid arrests, . . . The dispositive factor is appellants' failure to establish that the confessions were prompted by any illegal police procedures. . . . Under these circumstances, the trial court properly admitted the confession of each of the defendants.

(Citations omitted.)

We hold, therefore, that even if the initial seizure and detention of Lewis at the car was without probable cause to arrest and was illegal, his confession and statements were admissible because they were obtained "'". . . by means sufficiently distinguishable to be purged of the primary

taint"' rather than '". . . by the exploitation of that illegality."'" *State v. Byers, supra* at 8, quoting from *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407 (1963).

■ We are also not convinced by Lewis' arguments that his confession was obtained (1) in violation of *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), because the officers allegedly continued to question him after he requested an attorney and (2) in violation of *Malloy v. Hogan,* 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1964), because Officer McCluskey allegedly promised him leniency for his statement. The trial judge found on conflicting testimony that Lewis did not request an attorney, and his determination that the confession was not prompted by any impermissible police conduct is an implicit finding that no such promises were made. *State v. Thomas,* 16 Wn. App. 1, 553 P.2d 1357 (1976). We find substantial evidence to support these findings and they will not be disturbed on appeal. *State v. Petit,* 88 Wn.2d 267, 558 P.2d 796 (1977).

Next, Lewis argues that being told by the officers that Bliss had implicated him in the armed robberies, being questioned again on Sunday morning after he had refused to make a statement on Saturday afternoon, and the fact that he had been in custody more than 24 hours when he gave his confession, combined to "overbear [his] will to resist and bring about confessions not freely self–determined." *State v. Braun,* 82 Wn.2d 157, 161–62, 509 P.2d 742 (1973). We do not agree, and find substantial evidence to uphold the trial court's findings that his confession was neither coerced nor improperly induced but was voluntary and therefore admissible.

■ Defendant Bliss also argues that his confession was inadmissible because his arrest was unlawful. The arrest took place after Jeannie Brooks and Martha Morgan implicated him in the armed robberies. Bliss contends that the women were not legally in custody, and that statements made by them were "fruits" of the poisonous tree, *i.e.,* the

police could not validly effect his arrest on information gained through the allegedly unlawful arrest of Brooks and Morgan. Because one only has standing to challenge the legality of one's own arrest, this argument is without merit. *State v. Freeman,* 17 Wn. App. 377, 563 P.2d 1283 (1977); *cf. Brown v. United States,* 411 U.S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565 (1973); *United States v. Griffin,* 413 F. Supp. 178 (E.D. Mich. 1976).

Bliss further contends that his confession was procured by continuous questioning after he had asked for an attorney. As in the case of Lewis, we find that Judge Kirkwood heard conflicting testimony and found no such request was made, and this finding will not be disturbed on appeal.

■■ Although Bliss signed a waiver of rights form, he argues that his waiver was not valid. First, he contends he had been smoking marijuana shortly before his arrest and was intoxicated at the time he waived his rights and made the statement. "Intoxication alone does not, as a matter of law, render a confession involuntary and inadmissible." *State v. Smith,* 15 Wn. App. 103, 107, 547 P.2d 299 (1976). Judge Kirkwood heard the testimony of Bliss and the arresting officer and concluded that Bliss

> was not so incapacitated by the effects of smoking marijuana as to be unable to understand or knowingly and intelligently waive his constitutional rights.

Again, this determination has substantial support in the evidence and will not be disturbed on appeal. *State v. McDonald,* 89 Wn.2d 256, 571 P.2d 930 (1977).

Bliss also argues that he lacked the mental capacity to understand the *Miranda* rights, and therefore was incapable of intelligently waiving such rights. The evidence on this point consisted of Bliss' statement that he did not understand his rights and the somewhat ambiguous testimony of an expert witness that Bliss could understand and comprehend the substance of the *Miranda* warnings, but could not "evaluate" them. In any case, an expert's opinion concerning a defendant's mental capacity is not binding on the trier of fact. *State v. Skinner,* 1 Wn. App. 493, 463 P.2d

193 (1969). Judge Kirkwood, after observing Bliss, determined he did have the mental capacity to understand, and hence intelligently waived his *Miranda* rights. We will not disturb that finding as it finds support in the evidence. *State v. McDonald, supra.*

■ Lewis and Bliss both argue that their confessions and statements should not have been admitted because they were in custody for 2 days before being brought before a magistrate for their preliminary appearance. In effect, the defendants are asking us to apply the *McNabb–Mallory* exclusionary rule. *McNabb v. United States,* 318 U.S. 332, 87 L. Ed. 819, 63 S. Ct. 608 (1943). The *McNabb–Mallory* requirement is a rule of federal procedure and is not of constitutional dimension. *Culombe v. Connecticut,* 367 U.S. 568, 6 L. Ed. 2d 1037, 81 S. Ct. 1860 (1961). Our Supreme Court has directly considered the question and has refused to apply the *McNabb* rule in state proceedings. *State v. Vindhurst,* 63 Wn.2d 607, 388 P.2d 552 (1964); *State v. Keating,* 61 Wn.2d 452, 378 P.2d 703 (1963).

The defendants also contend that JCrR 2.03 requires the exclusion of the confessions and statements.[1] The defendants made their preliminary appearance on the Monday afternoon following their Saturday arrest. This was within the time period prescribed in JCrR 2.03(a). The defendants, however, argue that it was "practically possible" to bring them before a judge during the weekend and that it was error not to have done so. Even assuming defendants'

---

[1]JCrR 2.03(a)(1) provides in part:

"Any person arrested for any offense, including capital cases and other felonies and not released shall be taken without unnecessary delay before a judge. The term 'without unnecessary delay' means as soon as practically possible. In any event, delay beyond the close of business of the judicial day next following the day of arrest shall be deemed unnecessary."

JCrR 2.03(c)(1) reads:

"If a person arrested and not released is not afforded preliminary appearance within the time prescribed by section (a), including any enlargement, the court shall order such a person brought before the court forthwith, and in default thereof, the court shall order his immediate release, unless good cause to the contrary be shown."

contentions are correct and there was a violation of the rule, the statements would not have been rendered inadmissible on this theory. Violation of JCrR 2.03 merely starts the 60–day CrR 3.3 speedy trial time period running at the time the defendants should have received a preliminary appearance, *State v. Stanmore,* 17 Wn. App. 61, 562 P.2d 251 (1977); it does not require the exclusion of statements made during the time period. This argument is without merit.

In summary, we find no error in admitting the confessions and statements of either defendant Lewis or defendant Bliss.

### ADMISSIBILITY OF THE PHYSICAL EVIDENCE

There were only three pieces of physical evidence involved in this appeal: (1) a gun, (2) a pair of eyeglasses allegedly belonging to defendant Lewis, and (3) a jacket matching the description of the coat worn by one of the robbers.[2] The police were given the weapon and eyeglasses by private individuals. There was no search or seizure involved and the items were clearly admissible. *Burdeau v. McDowell,* 256 U.S. 465, 65 L. Ed. 1048, 41 S. Ct. 574, 13 A.L.R. 1159 (1921).

During a search of Louis Brooks' car, the police found a jacket thought to be the one worn by one of the robbers. The jacket was introduced at Lewis' trial. Because Lewis was not in the car at the time of the search, and apparently had no ownership or possessory interest in the automobile, he has no standing directly to challenge the search of the car. *Brown v. United States, supra; State v. Kearney,* 75 Wn.2d 168, 449 P.2d 400 (1969).

---

[2]Although Bliss raises questions concerning the manner in which the search of the residence was conducted, nothing found in the apartment or cars was introduced at trial. There was no basis for his challenging of the search. *See State v. Fleetwood,* 75 Wn.2d 80, 448 P.2d 502 (1968).

## The Propriety of the Miscellaneous Rulings
### Assigned as Error

■ Lewis argues that his lineup identifications should have been suppressed because an attorney was not present; the lineup was held early on Monday afternoon—before Lewis made his preliminary appearance. Counsel is not required at a lineup undertaken before the initiation of judicial proceedings. *Moore v. Illinois,* 434 U.S. 220, 54 L. Ed. 2d 424, 98 S. Ct. 458 (1977); *Kirby v. Illinois,* 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972). The right to counsel at a lineup does not attach until charges have been formally filed. *State v. Knapp,* 8 Wn. App. 825, 509 P.2d 410 (1973). This motion was properly denied.

During the trial a tape recording of Lewis' confession was played for the jury. The confession made reference to a third uncharged robbery. Although the prosecutor had agreed to delete those portions of the recording that dealt with the uncharged crime, he accidentally failed to do so. Lewis moved for a mistrial on the grounds that reference to the third robbery was unduly prejudicial. Judge Kirkwood denied Lewis' motion for a mistrial but did have these references excised from the tapes before they went to the jury.

■ Although a trial judge has broad discretion to take whatever remedial action he determines is necessary to neutralize the effect of irregularities at trial, *State v. Swenson,* 62 Wn.2d 259, 382 P.2d 614 (1963); *State v. Blum,* 17 Wn. App. 37, 561 P.2d 226 (1977), a mistrial should be granted only when "nothing the trial court could have said or done would have remedied the harm done to the defendant." *State v. Swenson, supra* at 280; *State v. Case,* 49 Wn.2d 66, 298 P.2d 500 (1956). In other words, a mistrial should be granted only when the defendant has been so prejudiced by the trial error that nothing short of a new trial can insure that he will be fairly tried. *State v. Studebaker,* 67 Wn.2d 980, 987, 410 P.2d 913 (1966). Only those errors which may have affected the outcome of the trial are prejudicial. *State v. Martin,* 73 Wn.2d 616, 627, 440 P.2d 429 (1968); *State v. Hartnell,* 15 Wn. App. 410,

550 P.2d 63 (1976). We do not believe that the mention of the third armed robbery had any effect on the outcome of the trial; Lewis would have been convicted without the reference. The State introduced Lewis' detailed confession, testimony by Martha Logan implicating Lewis, eyewitness identifications and the physical evidence. We find no abuse of discretion in the refusal to declare a mistrial. Our holding in this regard is strengthened by our belief that had there been no stipulation to edit the remarks from the tape, evidence of the other robbery would have been admissible to prove the offenses charged because there were similarities in the description of the perpetrators, and all three crimes were committed in the same general time frame and in the same manner. *State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950).

Lewis also assigns as error the trial judge's refusal to grant his motion for a new trial. After Lewis' trial and during the trial of defendant Bliss, it became apparent that prosecution witness, Officer Timmons, had incorrectly imputed a statement to Lewis that was in reality made by Bliss. Officer Timmons testified at both trials. In light of the overwhelming evidence introduced against Lewis, we do not find this error to be prejudicial. *State v. Martin, supra.* Judge Kirkwood was correct in denying the motion for a new trial.

Finally, defendant Bliss contends the prosecution violated the disclosure provisions of CrR 4.7 when it did not provide him with a copy of a letter written by him and used to rebut his alibi, and when it failed to disclose the name of the expert witness called to authenticate his signature. Bliss objected to the testimony of the witness, but withdrew his initial objection to the admission of the letter. Issues not raised in the trial court will not be considered on appeal. *Fuqua v. Fuqua,* 88 Wn.2d 100, 558 P.2d 801 (1977). Furthermore, exclusion of the undisclosed evidence has been expressly rejected as a sanction for violation of this rule. *State v. Stamm,* 16 Wn. App. 603, 559 P.2d 1 (1976); *Washington Proposed Rules of Criminal Procedure,*

presented to the Washington Judicial Council by the Criminal Rules Task Force, May 15, 1971, Rule 4.7, comment at 85. The trial judge's ruling was correct.

THE STATE'S CROSS APPEAL

Judge Kirkwood held that RCW 9.41.025 was unconstitutional because it violates the equal protection clauses of both the federal and state constitutions. Subsequent to his decision, the Washington Supreme Court decided *State v. Thompson,* 88 Wn.2d 60, 558 P.2d 245 (1977), which upheld the constitutionality of the statute. It was error to refuse to sentence the defendants to the mandatory minimum term provided by the statute.

Affirmed and remanded for resentencing of the defendants consistent with the provisions of RCW 9.41.025.

PEARSON, C.J., and PETRIE, J., concur.