THE STATE OF CONNECTICUT *vs.* ABRAHAM FOX ET ALS.

Second Judicial District, Norwich, April Term, 1910.
HALL, C. J., PRENTICE, THAYER, RORABACK and ROBINSON, JS.

Under General Statutes, § 1210, receivers of stolen goods are to be prosecuted and punished in the same manner as the thief; and therefore a judgment of acquittal upon such a charge, if rendered by a court having jurisdiction, would be a bar to a subsequent prosecution for the theft of the same property.

Prior to 1874 it was competent for justices of the peace and local inferior courts, under the provisions of what is now § 1438 of the General Statutes, to hear criminal causes the punishment for which might be greater than that which they were authorized to impose, and if in their opinion no greater punishment than they had power to inflict was deserved, to impose such punishment, and thereby end the matter; but in that year an Act was passed, which is now General Statutes, § 1446, providing that "no justice of the peace, borough, town, police, or city court, shall have final jurisdiction of any prosecution for crime, the punishment for which may be imprisonment in the State prison." *Held:*—

1. That the purpose and intent of the Act of 1874 was to preclude the courts therein named from thereafter rendering judgments of acquittal and conviction in cases for which the punishment might be imprisonment in the State prison; and that since its passage such courts in such cases had only the power to investigate and bind

over if they found probable cause, or, if not, to discharge the accused.

2. That such a hearing was in no legal sense a trial, but a mere inquest, and therefore the accused could not plead his discharge by a local inferior court in bar of a subsequent prosecution in a court having jurisdiction of the alleged offense.

Copper bond-wires while attached to the tracks of a railroad company are real estate and as such are not the subject of theft.

The lessee in possession of a railroad under a long-term lease, who is bound by its terms to keep the road-bed and other property in repair and to replace all worn out and removed parts, is properly alleged to have been the owner of copper bond-wires which were stolen after their severance from the tracks and while they remained upon the railroad property.

The defendants claimed that an alleged accomplice had instigated their prosecution for theft because they refused to give bail for him after his arrest. *Held* that it was competent for the State to show that prior to the defendants' refusal the accomplice had confessed to his part of the crime and had implicated them as the guilty receivers of the stolen property.

A general verdict of guilty upon an information charging the theft of property worth a stated sum is a finding that the allegation of value as well as the other allegations are true; especially if the jury could not, consistently with the evidence, have found a less value, and no request was made by the accused for a specific finding by the jury upon that subject.

The allegation of value in an information for theft is to apprize the accused of the degree of crime which the State claims and will attempt to prove.

Argued April 26th—decided June 14th, 1910.

INFORMATION for stealing copper wire, brought to the Superior Court in New London County and tried to the jury before *Ralph Wheeler, J.;* verdict and judgment of guilty, and appeal by the accused. *No error.*

The information contained but one count, and charged the accused with the theft of 312 copper bond-wires of the value of $258, of the goods and chattels of the New York, New Haven and Hartford Railroad Company.

It was an undisputed fact upon the trial that that company was the lessee, under a lease for the term of

one hundred years beginning in 1869, of a steam railroad owned by the Norwich and Worcester Railroad Company, and that it was operating it as a steam railroad at the time of the alleged theft. It was also undisputed that in 1906 or early in 1907, the ends of the rails upon that portion of the track which extends from Jewett City to Plainfield had been connected by bond-wires, consisting of small copper wires twisted into a cable, the ends of the cable being pressed into holes in the ends of the rails by hydraulic pressure so as to form a union of the metals. These connections were made by the Consolidated Railway Company, another corporation, for the purpose of adapting the track to be used for trolley or electric cars by that Company in connection with its use by the lessee company as a steam road, and it was in such use at the time of the alleged theft. The materials used in making these connections were furnished by the New York, New Haven and Hartford Railroad Company upon requisition made by the Railway Company.

Under the terms of its lease the New York, New Haven and Hartford Railroad Company was bound to keep and maintain the leased railway, its road-bed, bridges, grounds, etc., in as good order and repair as when received, and to renew property worn out or destroyed by use, accident, design, or removal, and at the expiration of the lease to surrender the railroad and other property and the renewals and substitutions of the same in as good condition as when received.

The State claimed to have proved upon the trial that on the night of March 19th, 1907, one Gertz, assisted by a man named Lewis, severed 312 of the bond-wires from the rails, placing them in a heap upon the railroad's right of way, and left them there; and that during the morning of March 20th, they returned with a team, carried off the wire and sold it to the

defendants in Norwich, and that the latter purchased and concealed it with knowledge that it was stolen.

The State offered evidence to prove that the wire so stolen and received weighed 702 pounds, and that its market value as junk was twenty cents per pound, or $140.40 in all, at the time it was stolen. No other evidence as to its value was offered.

Gertz was arrested in 1908, charged with the theft of the bond-wire and pleaded guilty. The defendants were also arrested and presented before the City Court of Norwich upon the charge of receiving the bond-wire from Gertz knowing it to be stolen property. The stolen property was described as of the value of $100 in the complaint upon which they were presented. They were found not guilty by the City Court and discharged, the court also finding that it was a case in which if they were guilty no greater punishment ought to be imposed than could lawfully be imposed by that court.

Subsequently the defendants were arrested upon a bench warrant issued by the Superior Court upon the present information, which was filed by the State's Attorney. The defendants pleaded the acquittal in the City Court in bar of the prosecution of this information. The State demurred to this plea, and the demurrer was sustained.

The defendants, upon their plea of not guilty, claimed and offered evidence to prove that they did not buy or receive the bond-wires of Gertz, or have any transaction with him, or know of the theft, and that this prosecution was inspired by Gertz and his wife because the defendants, after the arrest of Gertz, had refused, when applied to by his wife, to furnish bonds for his appearance for trial. After they had offered evidence to prove that the wife had requested them to become sureties for her husband, and that she had

threatened that if they did not she would inform against them, the State, against the objection of the defendants, was permitted to offer Gertz as a witness, who testified that prior to the claimed threat of his wife he had confessed to the theft and signed an affidavit implicating the defendants in the transaction.

The defendants claimed that the bond-wires, after they were attached to the rails, became a part of the real estate and belonged to the Norwich and Worcester Railroad Company; that as real estate they were not the subject of larceny; that they were improperly described in the information as the property of the New York, New Haven and Hartford Railroad Company; and that there was a fatal variance in these respects between the proof and the allegations of the information. Requests to charge bearing upon these claims were made to the court.

The jury returned a verdict of guilty against each of the accused, after which the court said to them: "Gentlemen, you are excused until next Wednesday morning at ten o'clock." All the jury except one then left the court-room and the court-house. In a few minutes it was discovered that the jury had not been inquired of as to the value of the property. The court thereupon instructed the sheriff to send his deputies at once to reassemble the jury, and in about two hours the jurors were again present in the court-room. Under instructions from the court, the clerk then asked the jury whether, before reporting their verdict, they had agreed upon and found the value of the property. They replied that they had. They were then asked what they found the value to be, and replied $140.40. The defendants objected to these inquiries being put and excepted to it. They afterward made a motion in arrest of judgment, upon the ground that this proceeding was invalid and that there was no verdict in the

case upon which a valid judgment could be rendered. The motion in arrest was overruled.

The court's action in sustaining the demurrer to the plea in bar, in overruling the motion in arrest of judgment, in admitting the testimony of Gertz, and in neglecting to charge in accordance with the defendants' claims as to the character of the wire as real estate, as to its ownership, and as to the variance between the proof and the allegations of the information, are assigned as error by the defendants.

*William H. Shields* and *Charles F. Thayer*, for the appellants (the accused).

*Hadlai A. Hull*, State's Attorney, for the appellee (the State).

THAYER, J.   The defendants were formerly prosecuted in the City Court of Norwich as receivers of the stolen goods now in question, and were acquitted by that court. They pleaded that acquittal in bar of the present prosecution. Receivers of stolen goods are to be prosecuted and punished in the same manner as the person who committed the theft. General Statutes, § 1210. Under this statute they could be charged with the theft as principals, or with being receivers of the stolen goods knowing them to be stolen. *State* v. *Kaplan*, 72 Conn. 635, 640, 45 Atl. 1018. A conviction or acquittal upon the latter charge would be a bar to a prosecution charging them with the theft. If the City Court had jurisdiction to acquit the parties when presented before it, their plea in bar was good.

By the city charter that court has power "to hear and determine charges for crimes and misdemeanors committed within the . . . city of Norwich the punishment of which, as prescribed by law, does not exceed a

fine or penalty of two hundred dollars, or six months' imprisonment in a common jail, . . . or such fine and imprisonment both." 7 Special Laws, p. 676, § 4. If the crime charged against the accused in any case is of so aggravated a nature as to require a greater punishment than that above specified, it is provided that the accused shall be bound over to the Superior Court in the manner provided in cases of binding over by justices of the peace. The punishment for larceny, where the value of the goods stolen exceeds $50 and does not exceed $2,000, is imprisonment in jail or the State prison for not more than five years. General Statutes, § 1207. The value of the stolen goods, as charged in the complaint in the City Court, was $100, and as the punishment for the crime therein alleged might have been six months or less in jail, and the court found that no greater punishment than that ought to be inflicted, it is claimed that the case was within the final jurisdiction of that court, and that its judgment of acquittal is conclusive as to the guilt of the accused.

Under a statute existing prior to 1874, whenever any complaint for any criminal matter was brought before a justice of the peace in which the punishment provided by law might exceed a fine of $7 and imprisonment for thirty days (the maximum which a justice could impose), and might be less than such fine and imprisonment, such justice might proceed to hear and try the same, and in such cases, if in his opinion no greater punishment than a fine of $7 and imprisonment for thirty days ought to be imposed, he could render judgment not exceeding such fine and imprisonment therein; but if in his opinion the case was of such an aggravated nature that a greater punishment should be inflicted, he could bind the accused over to the next Superior Court. General Statutes, Rev. 1866, p. 281, Chap. XI, § 215. Under the statute, if the justice found that no greater

punishment was deserved than he had jurisdiction to inflict, and he imposed such punishment, that ended the matter.   No original information for the same offense could be filed or prosecuted in the Superior Court against the accused, however aggravated the offense may have been, or however inadequate the punishment which was inflicted.   *State* v. *Davidson,* 40 Conn. 281, 282.   The City Court of Norwich having the same powers as justices of the peace as respects hearing and binding-over in cases where the punishment may be within or may exceed its jurisdiction, the rule stated in *State* v. *Davidson,* applicable to justices in such cases under the statute referred to, would apply to it.   A similar statute still exists.   General Statutes, § 1438. The defendants claim that under this statute the City Court had the power to make the finding which it did and to acquit the accused.

General Statutes, § 1446, which was enacted in 1874, shortly after the case referred to was decided, provides that "no justice of the peace, borough, town, police, or city court, shall have final jurisdiction of any prosecution for crime, the punishment for which may be imprisonment in the state prison."   The purpose and effect of this statute was to take away from justices and the other inferior courts the power to take jurisdiction and render judgments of conviction or acquittal in cases in which the punishment might be imprisonment in the State prison.   The words "final jurisdiction" here refer to the power to render judgments of conviction or acquittal, as distinguished from the power to bind over to the Superior Court.   These courts never had final jurisdiction in the strict sense in such cases: an appeal was always allowed from their sentences. By taking from the inferior courts such final jurisdiction, sole cognizance and jurisdiction of cases where the punishment may be imprisonment in the State

prison is left in the Superior Court. General Statutes, § 1468.

Section 1480 of the General Statutes provides that "an original information may be filed in the Superior Court against any person accused of crime, in cases in which an inferior court may, at its discretion, punish him, or bind him over for trial." This statute and § 1446 were enacted at the same time. It is claimed by the defendants that the two sections relate to the same thing, must be read together, and that the purpose of their enactment was to give to the Superior Court concurrent original jurisdiction with the inferior courts in cases where formerly the latter had discretion to punish or bind over. If this were the sole end in view, the enactment of § 1446 was entirely unnecessary, and in fact defeats the purpose intended, for, as already stated, it takes from the inferior courts the discretion to punish or bind over in the class of cases to which it relates. Its effect is to remove that class of cases from those in which those courts have power to punish or bind over. Such courts still have power, if a case of this class is brought before them, to bind the accused over to the Superior Court for trial if probable cause is found (General Statutes, § 1440); but they have no power to convict or acquit him.

In cases of which the Superior Court has sole cognizance, the State's Attorney has, and has always had, by the common law, power to file an original information, except in cases where the prosecution must be upon indictment by a grand jury. *State* v. *Keena*, 64 Conn. 212, 216, 29 Atl. 470. As the cases mentioned in § 1446 are placed within the original and exclusive jurisdiction of the Superior Court, and an original information could be filed for their prosecution at common law, there was no need of § 1480 as applicable to such cases. It having been held in *State* v. *Davidson*, 40 Conn. 281,

that the Superior Court had no original jurisdiction of cases in which the punishment might be within or without the jurisdiction of the inferior court, the purpose of § 1480 is apparent. It was stated in *State* v. *Keena,* 64 Conn. 216, 29 Atl. 470. Its effect is to enable the State's Attorney to file an original information in the Superior Court for the prosecution of the offenses referred to in that section. The section has no bearing upon the question now before us, because the case before us is not, and the original case in the City Court was not, within the class of cases referred to in that section.

When cases within the sole original cognizance of the Superior Court are brought before an inferior court, its powers are limited, under § 1440, to inquiring into the facts, and, if it find probable cause to exist, to binding the accused over to the Superior Court for trial, and, if it does not find probable cause, to discharging him. The proceeding is a mere inquest. It is not a trial. The discharge is not an acquittal. Upon the discovery of new evidence, the accused may be again presented before the same court for another inquiry, or may be brought directly before the Superior Court upon an original information to answer to the same charge. The discharge upon the former hearing cannot be pleaded in bar of such subsequent prosecution.

This was the extent of the power of the City Court on the hearing before it. It had no jurisdiction either to find that the punishment in the case ought not to be greater than it might lawfully impose, or to render a judgment acquitting the defendants. The demurrer to the plea in bar was therefore properly sustained.

No error in the charge of the court as given is assigned, except the general one that it was not adapted to the facts in the case and did not sufficiently call the attention of the jury to the legal distinctions and issues involved, especially with reference to the ownership and

possession of the railroad by the different corporations as bearing upon the possession of the stolen property at the time it was taken. Substantially the same questions are attempted to be raised by this assignment of error as are raised by the tenth, eleventh and twelfth reasons of appeal, wherein the court's failure to charge as claimed by the defendants as to the same matters is assigned as error. They presented requests to charge upon the subject of these claims, but the court's refusal to charge as requested is not assigned for error. As presented, the requests were properly refused. They serve, however, to show what claims were made by the defendants. An examination of the charge fails to discover any substantial ground for the assignments of error with respect to it.

The jury were instructed in substantial compliance with the defendants' claim that the bond-wires, when attached to the rails, were to be held to be real estate, and as such were not the subject of theft.

The court's failure to instruct the jury that when so attached the wires were the property of the Norwich and Worcester Railroad Company, was not error. Under the charge it made no difference whether they were the property of the lessor or the lessee while they remained attached to the rails: they were not a subject of theft in either case. If the jury found, as they must have done under the instructions, that the severing of the wires from the rails and their asportation were distinct transactions, separated by an interval of time during which the detached wires remained upon the railroad property, they properly found, and might have been instructed, that the property in the wires at the time they were stolen was in the New York, New Haven and Hartford Railroad Company, as alleged in the information. That company was in possession of the railroad under a long-term lease, by the provisions of which it was

The State *v.* Fox.

bound to keep the tracks and the other property in repair, and replace all parts which should wear out or be removed. Under a proper construction of the lease, the worn out and removed parts became, when severed, the property of the lessee.

The wires being the personal property of the New York, New Haven and Hartford Railroad Company, the defendants were not injured by the court's refusal to charge, as claimed, that there was a fatal variance between the proof and the allegations of the complaint as to the ownership of the property.

The defendants having claimed that this prosecution was instigated by Gertz and his wife because the defendants, after his arrest, refused to become bound for his appearance in court for trial, it was competent for the State to show that, prior to such refusal, Gertz had confessed to his part of the crime and had implicated the defendants as receivers of the goods with knowledge that they were stolen. The testimony of Gertz which was objected to tended to prove this and was properly received.

The questions asked Handleman on cross-examination by the defendants' counsel were properly excluded as repetitions and not proper cross-examination.

The jury returned a general verdict of guilty, without therein fixing the value of the stolen property. They were thereupon excused by the court until a future day. Afterward, and about two hours after they had left the court-room and court-house, they were recalled and reassembled in the court-room by order of the court, and, being inquired of by the clerk, stated that before reporting their verdict they had agreed upon the value of the property, and found it to be $140.40. The defendants' motion in arrest of judgment raises the question of the validity of the verdict and subsequent proceedings. It is unnecessary to consider the effect of the

proceedings after the verdict was rendered and the jury excused. We think that the general verdict as rendered was valid without any other finding as to the value of the property. Under our statute relating to simple theft, § 1207 of the General Statutes, the value of the thing stolen measures the degree of the crime. *State* v. *Kaplan,* 72 Conn. 635, 640, 45 Atl. 1018. The information must inform the accused of the degree of the crime which the State claims and will attempt to prove, and the allegation of the value of the property is for this purpose under this statute. When so alleged, we think that a general verdict of guilty is a finding that the allegation of value, as well as each of the other allegations of the information, is true, so far as necessary to the establishment of the guilt of the accused as charged. This is the view taken in several States which have statutes like ours grading the punishment for larceny. *Schoonover* v. *State,* 17 Ohio St. 294, 301; *State* v. *White,* 25 Wis. 359, 363; *State* v. *Kelliher,* 32 Or. 240, 50 Pac. 532; *State* v. *Bohle,* 182 Mo. 58, 67, 81 S. W. 179, 181; *State* v. *Fink,* 186 Mo. 50, 57, 84 S. W. 921, 923. In some of the other States a different view has been held. We see no reason why the doctrine applicable in other cases should not apply in larceny. There would be no question that a general verdict would be sufficient if the crime charged were theft from the person, where the value of the property does not affect the punishment, although upon such a charge a conviction might be had for simple theft. So, on an information charging an assault with intent to kill, a general verdict would be a finding of an assault made with the intent alleged, although a partial verdict of simple assault only might be found. It has been held repeatedly in this State, as well as others, that a general verdict of guilty is good in cases where different crimes are charged in different counts of the information. *State* v. *Stebbins,*

29 Conn. 463, 471; *State* v. *Basserman,* 54 id. 88, 93, 6 Atl. 185. This is held to be the rule, although some of the counts are defective and insufficient to support the verdict. *State* v. *Stebbins, supra.* The accused, in such a case, could call for a finding by the jury as to the count upon which it based its verdict. In the absence of such finding, a general verdict is good if supported by any sufficient count in the information.

In the present case the finding shows that there was evidence sufficient to prove that the value of the property greatly exceeded $50. This testimony was uncontradicted. It is apparent that the jury could not have found with any consistency that the value of the property did not exceed that sum. In the absence of any request on the part of the defendants that the jury should find the value of the property, the verdict of guilty must be held to include a finding that it was of the value claimed by the State.

What occurred after the verdict had been rendered and accepted becomes of no consequence. The defendants cannot complain of the fact that the jury were reassembled and inquired of concerning their finding as to the value of the property. That action of the court was not harmful to the defendants, but rather in their interest.

There is no error.

In this opinion the other judges concurred.