STATE OF CONNECTICUT *v.* LEO PAMBIANCHI

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

Argued December 2, 1952—decided February 24, 1953

*J. Harold Merrick,* with whom was *Charles M. Lyman,* for the appellant (defendant).

*Lorin W. Willis,* state's attorney, with whom, on the brief, was *Otto J. Saur,* assistant state's attorney, for the appellee (state).

BALDWIN, J.   The defendant was convicted in a trial to the jury of the crime of receiving stolen goods, and he has appealed.

Of the several errors assigned, we shall consider first the denial by the trial court of the defendant's motion to set aside the verdict.   The jury could reasonably have found these facts: The defendant conducted a used-car business in Ridgefield.   A few days prior to April 7, 1950, Oscar Gregorius, a representative of Arthur Geller, a used-car dealer on Long Island, called on the defendant and inquired concerning used cars for sale.   He gave the defendant the name and address of his employer, Geller.   Later, the defendant called Geller and inquired whether he knew of the deal made between the defendant and Gregorius.   The defendant did not give his name but told Geller that he had a 1949 Cadillac convertible for sale for $2100.   That price was very low.   At that time, the defendant did not have such an automobile. He called Geller the following day and repeated his offer.   He asked again if Geller knew of the deal between him and Gregorius and stated, "You know there is a possibility these are hot cars," meaning that they had been stolen.   He said he was selling the car for a friend and did not want to give his name.   Geller showed a willingness to purchase the car, but the defendant said he would call later in the week.   A day or two later, Gregorius, at Geller's request, called the defendant concerning the purchase of the Cadillac.   The defendant instructed Gregorius to bring Geller to Ridgefield and arranged to meet them there.

On the early morning of April 7, 1950, a 1949 Cadillac convertible was stolen from the owner, Kovner, in New York. It was delivered to the defendant by a stranger at a prearranged meeting in the nighttime on a street in downtown New York. The defendant took the car on consignment, agreed to pay $1600 for it, and brought it to Ridgefield. He did not examine the motor number or registration of the automobile. As a matter of fact, the motor number had been mutilated, and a fictitious license had been obtained on the very day that the car was delivered to the defendant.

On the afternoon of April 8, Gregorius and Geller, accompanied by a man named Muller, who was in fact a New York police detective but who was disguised to represent Geller's service manager, met the defendant in Ridgefield. The defendant insisted that Geller and Gregorius ride in his car, while the car owned by Gregorius and driven by Muller followed them. They proceeded for several miles over a winding backwoods road to an old farmhouse. A 1949 Cadillac convertible stood in the yard. Geller expressed approval of the car and asked for the ownership papers. The defendant produced a registration issued by the state of New York on April 7, 1950, to Thomas Gaspero of 438 East 68th Street, New York City. Geller suggested a road test for the car, which the defendant refused to agree to unless Geller would put his own dealer plates on the car. The plates were changed but the defendant still insisted that they drive down a dead-end road. Geller asked that the purchase be delayed so that he could check the title, but the defendant demanded a $1000 deposit, claiming he had another prospective purchaser. The defendant suggested that Geller give the money to Gregorius, whom the defendant

would take to a place five minutes away to deliver it to the actual seller of the car. There was no such person. Geller refused to deliver the money and told the defendant that he would rather let the deal end. When the defendant was called upon by the police, he immediately asked them if the car was "hot." He told the police two inconsistent stories about how the car came into his possession.

The question upon the motion to set aside the verdict is whether the evidence was sufficient to establish the essential elements of the crime charged. These are: "1. The property must have been stolen. 2. It must have been received by the accused with the knowledge that it was stolen. 3. It must have been concealed within the meaning of the law. 4. It must have been received and concealed by the accused with a felonious intent." *State* v. *Alderman,* 83 Conn. 597, 600, 78 A. 331; *State* v. *Newman,* 127 Conn. 398, 400, 17 A.2d 774. The defendant concedes that the automobile was stolen. His knowledge that it was stolen at the time he received it may be inferred, if the circumstances were such that a reasonable man of honest intentions should have come to that conclusion. *State* v. *Weiner,* 84 Conn. 411, 417, 80 A. 198. Receiving and concealing stolen goods with felonious intent means simply that the accused takes them into his possession without claim of right and handles them stealthily, with the intent of keeping them from their true owner and of converting them to a use other than that of the owner without his consent. *State* v. *Enanno,* 96 Conn. 420, 422, 114 A. 386. The evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt, and the court properly denied the motion to set aside the verdict.

The defendant assigns error in the failure of the court to dismiss the charge against him on its own

motion. He argues that, because the automobile was stolen in New York and he received it there, the courts of this state have no jurisdiction of the alleged crime. The defendant concedes that it was stolen before it came into his possession and that he drove it to Ridgefield, in this state. One who steals property elsewhere and brings it into Connecticut can be prosecuted here for the theft. *Rex* v. *Peas,* 1 Root 69; *State* v. *Ellis,* 3 Conn. 185, 187; *State* v. *Cummings,* 33 Conn. 260, 264; *State* v. *Heno,* 119 Conn. 29, 34, 174 A. 181; 2 Wharton, Criminal Law (12th Ed.), p. 1488. Section 8403 of the General Statutes provides that any person who knowingly receives and conceals stolen goods shall be prosecuted and punished as a principal. The rationale of the statute is that such a person is an accessory and can be prosecuted as the thief. *State* v. *Weston,* 9 Conn. 527, 529; *State* v. *Kaplan,* 72 Conn. 635, 639, 45 A. 1018; *State* v. *Fox,* 83 Conn. 286, 291, 76 A. 302; note, 156 A.L.R. 862, 864. The crime of receiving and concealing stolen goods, like that of theft, is a continuing one, and the courts of this state have jurisdiction whenever stolen goods actually received in some other state are brought within the territorial limits of Connecticut.

Error is claimed in two rulings on evidence. Geller, a witness produced by the state, testified on cross-examination that he had given a written statement to the police. Counsel for the defendant demanded that the statement be produced so that it could be used in the cross-examination of the witness. The statement having been produced, the court required counsel to state the particular inconsistencies which he thought the statement might reveal before it was made available for the purpose of the cross-examina-

tion. Counsel having stated his claims, the court examined the statement and ruled that it could not be used. This procedure was proper, the ruling was within the discretion of the court and that discretion was not abused. *Hurley* v. *Connecticut Co.*, 118 Conn. 276, 284, 172 A. 86; *State* v. *Hayes*, 127 Conn. 543, 602, 18 A.2d 895. The defendant also complains of the refusal of the court to permit the use of a certain book, known as the "blue book" or the "N.A.D.A. book," which listed prices of used cars, in cross-examining a witness who had testified concerning the value of automobiles in 1950. This ruling was correct because the book had not been identified as a recognized authority on the subject. *Richmond's Appeal*, 59 Conn. 226, 244, 22 A. 82; see *Tompkins* v. *West*, 56 Conn. 478, 485, 16 A. 237.

There was no illegality in the sentence. The term imposed was within the limits fixed by the statute. This court, therefore, has no discretionary jurisdiction in the matter. *State* v. *Chuchelow*, 128 Conn. 323, 324, 22 A.2d 780. We do not consider any claim of error in the charge because the defendant filed no requests and took no exceptions as required by the rule. Practice Book § 153. This situation renders the errors claimed in the finding of no consequence, because a finding in a case tried to the jury primarily serves the purpose of presenting errors claimed in the charge. *State* v. *Hayes*, supra, 582.

There is no error.

In this opinion the other judges concurred.