James RAFFONE, Sr., Petitioner-Appellee,

v.

Frederick E. ADAMS, Warden, Connecticut Correctional Institution, Somers, Connecticut, Respondent-Appellant.

No. 748, Docket 72–1004.

United States Court of Appeals, Second Circuit.

Argued June 29, 1972.

Decided Sept. 19, 1972.

Jerrold H. Barnett, Asst. State's Atty. for New Haven County, New Haven, Conn. (Arnold Markle, State's Atty. for New Haven County, New Haven, Conn., on the brief), for respondent-appellant.

Alfonse C. Fasano, New Haven, Conn. (Victor Paul Fasano, New Haven, Conn., on the brief), for petitioner-appellee.

Before MOORE, SMITH and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

On this appeal by the State of Connecticut from an order of the District Court for the District of Connecticut, M. Joseph Blumenfeld, *Chief Judge*, granting a state prisoner's petition for a writ of habeas corpus and ordering his discharge from custody unless the State within 20 days vacated his conviction and scheduled a retrial, the chief issue presented is whether probable cause for the warrantless arrest of petitioner was pro-

vided by three tips given to the police, at least two of which failed to meet the requirements for probable cause, but the three, when viewed in conjunction, had a "kind of 'internal corroboration'", as Judge Blumenfeld observed. We hold that the series of three tips, coming from at least two sources, provided the requisite probable cause for the arrest of petitioner without a warrant.

A related issue is whether there was probable cause for the warrantless search of the truck petitioner was driving immediately prior to his arrest. We hold that there was; and, alternatively, since there was probable cause for petitioner's arrest, that the search was proper as incidental to a lawful arrest.

We reverse.

I.

James Raffone, Sr. (hereinafter, "Raffone") on May 12, 1967 was convicted, after a jury trial in the Superior Court for New Haven County before Hon. Herbert S. MacDonald, on two counts of larceny in violation of Conn.Gen.Stat. § 53–63 (1958). He was sentenced to not less than 5 years and not more than 10 years on one count, and to 2 years on the other count; his effective sentence therefore was not less than 5 and not more than 12 years. On May 4, 1971, the Supreme Court of Connecticut unanimously affirmed Raffone's conviction. State v. Raffone, 161 Conn. 117, 285 A.2d 323 (1971). Later in May, Raffone's motion for reargument was denied.

Included among the numerous claims ruled upon by the Supreme Court of Connecticut on Raffone's direct appeal were the alleged lack of probable cause for his warrantless arrest and the consequent lack of probable cause for the warrantless search of the truck he was driving immediately prior to his arrest. These claims were specifically rejected by the Supreme Court which held that there was probable cause for the arrest and for the search; and that the search, being incidental to a lawful arrest, was proper. 161 Conn. at 122–23, 285 A.2d at 327. In so ruling, the Supreme Court

affirmed the pretrial denial by Hon. Philip R. Pastore of Raffone's motion to suppress and the denial at trial by Judge MacDonald of his renewed motion to suppress. Thus, prior to Judge Blumenfeld's decision on Raffone's habeas corpus petition, seven Connecticut state court judges—five justices of the Supreme Court and two judges of the Superior Court—had heard and rejected Raffone's claim of lack of probable cause for his arrest and the search of the truck.

On June 11, 1971, Raffone filed his petition for a writ of habeas corpus in the district court. Although various claims were alleged in the petition, the chief ones pressed were the alleged lack of probable cause for the arrest and search. Both sides having agreed to submit on the state court record, no evidentiary hearing was held. On September 24, 1971, Judge Blumenfeld filed his decision granting the petition for a writ of habeas corpus and ordering that Raffone be discharged from custody unless within 20 days the State vacated the judgment of conviction and scheduled an early retrial. From that decision and order the instant appeal was taken by the State of Connecticut. On October 14, 1971, the district court released Raffone on bail pending this appeal.

## II.

The undisputed facts relevant to the issues before us may be briefly summarized. They are the same as were before the Connecticut state courts and before the district court below.

On November 9, 1966, there was reported to the Hamden police the theft of about 590 Allstate snow tires and 185 cases of antifreeze from the Sears Roebuck store in Hamden. The stolen merchandise had been stored in a semitrailer which was parked against the rear of the store. The merchandise was stolen by taking the entire semitrailer which later was found in Hartford.

On November 23, 1966, Allied Distributors, also in Hamden, reported to the Hamden police that a truck containing a quantity of copper tubing and plumbing supplies had been stolen from its premises.

On November 26, 1966, Raffone and two other men [1] were arrested in Milford in front of the Milford Auto Wrecking Company where Raffone had parked a truck he had just been operating. In the truck, which Raffone opened at the request of the police, were approximately 20 Allstate tires, copper tubing, gutters, tools, lead ingots and leaders. The coils of copper tubing were stamped with the name of Allied Distributors and were later identified as having been stolen from Allied Distributors on November 23. The Allstate tires were later identified as having been stolen from the Sears store on November 9.

The issues on this appeal involve the propriety of Raffone's arrest without a warrant on November 26 and the ensuing warrantless search of the truck he had been operating just before his arrest. More specifically, the critical issue is whether the requisite probable cause for Raffone's arrest was provided by a series of three tips, to which we now turn.

The first tip was received by Captain McHenry [2] of the Hamden Police Department on an unspecified date shortly before the November 9 theft at the Sears store. This tip, in Captain McHenry's words, was that "I received information that James Raffone [Sr.] was looking for purchasers of—anyone who would

---

1. The two other men arrested with James Raffone, Sr. were his son, James Raffone, Jr., and James Arcangelo. The three were tried as co-defendants at the state trial. Each was convicted on the two larceny counts. On appeal, the conviction of Raffone, Jr. was reversed for insufficient evidence. Arcangelo died on January 8, 1971, prior to argument of the appeal; his appeal was dismissed as moot.

2. Captain McHenry was a seventeen year veteran of the Hamden Police Department. He was its captain of detectives.

care to purchase any tires." The identity of this informant was unknown.

The second tip was received by Captain McHenry on November 11 or 12. This tip, again in his words, was that "James Raffone, Senior, was involved in the theft of the tires from Sears Roebuck." This informant was known as a "credible, reliable source." Captain McHenry had relied on this informant in the past "for information regarding criminal activities"; such information had resulted in some six convictions.

The third tip was received on Saturday, November 26, at about noon, when Captain McHenry, who was at home, received a telephone call which was relayed to him by the Hamden Police Headquarters. In his words, this tip was that "James Raffone, Senior, was in possession of a Standard Freight motor truck, color silver, and that he had on this truck tires stolen from the Sears Roebuck Company in Hamden and that he was operating this truck on Route 1, in the vicinity of Milford." The identity of this informant was unknown. He was not the same informant who gave the second tip on November 11 or 12.

Immediately upon receipt of the telephone tip on November 26, Captain McHenry proceeded with a fellow Hamden police officer to drive through New Haven and West Haven on Route 1 to Milford. En route, Captain McHenry radioed the Hamden Police Headquarters to arrange for a Milford detective to meet them on the highway in Milford. This was done. Captain McHenry also was notified en route of the precise location of the truck said to be driven by Raffone; such notification was radioed to McHenry by two Hamden detectives who at the time were in New Haven checking junkyards for stolen tires and copper tubing and were directed to proceed to Route 1 in Milford. They did. As a result of this information, Captain McHenry and his colleagues, while driving westerly on Route 1 in Milford, saw the Standard Freight truck, which was proceeding in an easterly direction, pull off the highway and stop in an area in front of the Milford Auto Wrecking Company. They saw Raffone, who was driving the truck, and his two passengers, *supra* note 1, get out of the truck and walk toward the wrecking company building. When Raffone and his two passengers were 10 to 15 feet from the truck, Captain McHenry, who by this time had driven his car into the area and had gotten out, ordered them back to the truck, placed them under arrest for receiving stolen goods and advised them of their constitutional rights. Raffone, at Captain McHenry's request, thereupon opened the truck which was searched. The stolen goods described above were seized. All of this was completed by 12:45 P.M., less than an hour after the third tip was received.

At the time of the arrests, Captain McHenry was acquainted with each of the three men and recognized them as they got out of the truck. He knew that Raffone, Sr. had been convicted of armed robbery in the late 1930's and was employed by Standard Freight as a truck driver. He also knew that Raffone, Jr. had been convicted of breaking and entering with violence, and that Arcangelo had been convicted of receiving stolen goods.

### III.

On these undisputed facts, we turn directly to the essential question whether there was probable cause for the warrantless arrest of Raffone and for the warrantless search of the truck.

In reaching our decision, we believe, for several reasons, that it is neither necessary nor appropriate for us further to burden the judicial literature with an extensive discussion of the perplexing subject of probable cause. In the first place, the facts of this case present what we regard as a unique situation, for which we have found no precedent squarely in point. Secondly, the myriad subordinate questions involved here, as in any case, in the ultimate determination of probable cause have been exhaus-

tively discussed in prior decisions. And, finally, in the present choppy sea of probable cause, where the prevailing wind may be changing, we think it best for us as one of the "inferior Courts"[3] simply to take our bearings from the beacons that to us seem most reliable and to try to keep on course accordingly.

A good starting point is the Constitution itself. For of course the sole basis for this proceeding is the alleged denial of the federally protected right against "unreasonable searches and seizures" and the requirement that "no Warrants shall issue, but upon probable cause", both being provisions of the Fourth Amendment.

During the 180 years that the Fourth Amendment has been in effect,[4] the term "probable cause" has been the subject of many landmark decisions by the Supreme Court, as well as by the inferior Courts, including ours. In 1813, Chief Justice Marshall, in construing the "probable cause" provision of an early Act of Congress, 1 Stat. 678, rejected the contention that "probable cause means *prima facie* evidence" and held that "the term 'probable cause', according to its usual acceptation, means less than evidence which would justify condemnation . . . [i]t imports a seizure made under circumstances which warrant suspicion." Locke v. United States, 11 U.S. (7 Cranch.) 337, 347 (1813). More recently, Chief Justice Taft held that probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] . . . sufficient in themselves to warrant a man of reasonable caution in the belief" that an offense has been or

is being committed. Carroll v. United States, 267 U.S. 132, 162 (1925). Mr. Justice Rutledge, in Brinegar v. United States, 338 U.S. 160, 176 (1949), after describing the competing interests involved in reaching conclusions of probability, stated: "The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." And most recently, in United States v. Harris, 403 U.S. 573, 577 (1971), Chief Justice Burger, in articulating what we take to be the prevailing view[5] with respect to the quantum of information necessary to support a belief that an unidentified informant's information is truthful, cautioned that "we would do well to heed the sound admonition of United States v. Ventresca, 380 U.S. 102 (1965):

'[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from

---

3. U.S.Const. art. III, § 1.

4. The first ten amendments to the Constitution, which comprise the Bill of Rights, were proposed to the legislatures of the several states by the First Congress, 1 Stat. 97, on September 25, 1789. They became effective on December 15, 1791 upon ratification by three fourths of the states, as provided in Article V.

The Connecticut legislature did not get around to ratifying the Bill of Rights, including the Fourth Amendment, until April 19, 1939.

5. See United States v. Manning, 448 F.2d 992 (2 Cir.) (en banc), cert. denied, 404 U.S. 995 (1971) (majority opinion, Friendly, Ch. J., at 999; concurring opinion, Oakes, J., at 1002–03).

submitting their evidence to a judicial officer before acting.' [6] 380 U.S., at 108."

The critical question before us is "whether, at the moment the arrest was made [Captain McHenry] had probable cause to make it—whether at that moment the facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [Raffone] had committed or was committing an offense." [7] In short, "whether there was probable cause for the arrest at or before that time and without regard to what the subsequent search disclosed." [8] We hold there was.

At the time Captain McHenry arrested Raffone on November 26, 1966, at about 12:45 P.M., the following facts and circumstances either were within his knowledge or as to them he had reasonably trustworthy information in view of the totality of the circumstances: that a theft had occurred at the Sears Roebuck store in Hamden on November 9 by removing an entire semitrailer and its contents which included tires; that another theft had occurred at the Allied Distributors premises in Hamden on November 23 by stealing a truck containing copper tubing and other plumbing supplies; that within less than an hour of the arrest on November 26, Captain McHenry had been given information that a *specific person* (Raffone) previously known to him was driving a *specifically described truck* (Standard Freight motor truck, color silver) on a *specific highway* (Route 1) in a *specific town* (Milford) at a *specific time* (12 noon) containing *specifically described merchandise* (tires stolen from Sears Roebuck in Hamden); that the initial information given at 12 noon on November 26 to Captain McHenry was corroborated to the extent of the surveillance report radioed to him by the two Hamden detectives who, having left the junkyards they had been checking in New Haven for stolen tires and copper tubing and having proceeded to Route 1 in Milford, gave the precise location of the truck and the direction in which it was being driven by Raffone; that, as Captain McHenry himself observed, the truck stopped in front of the Milford Auto Wrecking Company, described by the district court below as an "automobile junkyard", the same type of place the two Hamden detectives had just been checking for stolen tires and copper tubing; that, when Raffone got out of the truck he had been operating and walked toward the wrecking company building, Captain McHenry recognized him immediately, having known that he was an experienced truck driver then employed by Standard Freight and that he had been convicted of armed robbery a good many years before; [9] that he also

6. The instant case of course involves a warrantless arrest and a warrantless search. We are mindful that "[t]he standards applicable to the factual basis supporting the officer's probable-cause assessment at the time of the challenged [warrantless] arrest and search are at least as stringent as the standards applied with respect to the magistrate's assessment." Whiteley v. Warden, 401 U.S. 560, 566 (1971). See United States v. Ellis, 461 F.2d 962, 965–66 (2 Cir. 1972).

7. Beck v. Ohio, 379 U.S. 89, 91 (1964).

8. United States v. Thompson, 356 F.2d 216, 222 (2 Cir. 1965), cert. denied, 384 U.S. 964 (1966).

9. The district court below referred to Raffone's armed robbery conviction of "more than a generation before" the larcenies of 1966" as "stale conduct", and alluded to recent decisions which exclude "evidence of previous convictions on the ground of remoteness in time, when such stale convictions are sought to be introduced for the purpose of impeaching the credibility of a witness."
We agree with the district court that Raffone's conviction for armed robbery in the late 1930's would be entitled to little weight, if any, in the determination of probable cause; and our recent decision in United States v. Puco, 453 F.2d 539 (2 Cir. 1971), did reverse a narcotics conviction where the government used a 21-year old prior narcotics conviction to impeach the defendant while on trial for violation of the federal narcotics laws.

recognized each of the other two men who got out of the truck with Raffone, one having been convicted of breaking and entering with violence and the other having been convicted of receiving stolen goods; and that these facts and circumstances were assessed by Captain McHenry in the light of the first tip he had received from an unknown informant shortly before the November 9 theft at the Sears store that Raffone was looking for purchasers of tires, as well as the second tip he had received on November 11 or 12 from a known informant (whose information relied on by McHenry in the past had resulted in some six convictions) that Raffone had been involved in the theft of the tires from Sears.

We hold, on the totality of the facts and circumstances summarized above, that at the time of the arrest Captain McHenry was warranted as a prudent man in believing that Raffone had committed or was committing a crime; in short, between 12 noon and 12:45 P.M. on November 26, Captain McHenry had a reasonable basis for a precise prediction that a crime not merely was about to occur, but was in progress.[10]

Surely the first two tips, considered separately or together, did not provide the requisite probable cause for an arrest. We shall assume furthermore, for purposes of this decision, that the third tip, although it comes closest to meeting the requirements for probable cause in view of the corroboration furnished by the observations and additional information of the police,[11] nevertheless would not alone have satisfied the requirement of probable cause. But, as the district court below observed, the series of three tips, coming from at least two sources, did provide some internal consistency; each to some degree reinforced and corroborated the information conveyed by the others. Viewing the three tips as a whole furnishes indicia of reliability which are missing when each is viewed in isolation. As we have recognized in a different context "[e]ach of the three episodes gained color from each of the others", United States v. Monica, 295 F.2d 400, 401 (2 Cir. 1961), cert. denied, 368 U.S. 953 (1962), and "in law as in life, the effect of [considering the evidence as a whole] generally is much greater than of the sum of the parts." United States v. Bottone, 365 F.2d 389, 392 (2 Cir.), cert. denied, 385 U.S. 975 (1966). In the context of the essential issue in the instant case, we have cautioned against the error of "treating each fact in isolation" and, referring specifically to what was said in *Bottone, supra,* we have observed that "the principle applies with special force to an officer's on-the-spot determination of probable cause". United States v. Manning, *supra* note 5, at 999; see United States v. Soyka, *supra* note 11, at 454; United States v. Gorman, 355 F.2d 151, 159 (2 Cir. 1965), cert. denied, 384 U.S. 1024 (1966) ("The combination of facts known to the agents . . . would

Nevertheless, it is important to bear in mind the distinction between (a) the use of a stale conviction for purposes of impeachment at trial, and (b) "a policeman's knowledge of a suspect's reputation"—including prior convictions of whatever vintage—"upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip." The Supreme Court, speaking through Chief Justice Burger, could hardly have been more articulate than it was in United States v. Harris, *supra,* 403 U.S. at 582–83, with respect to the reliance to be placed, in the determination of probable cause, on a law enforcement officer's knowledge of a suspect's reputation.

10. Draper v. United States, 358 U.S. 307, 313–14 (1959); United States v. Acarino, 408 F.2d 512, 514 (2 Cir.), cert. denied, 395 U.S. 961 (1969).

Under Connecticut law, the crime of receiving and concealing stolen goods, Conn.Gen.Stat. § 53–65 (1958), is a continuing crime. State v. Pambianchi, 139 Conn. 543, 95 A.2d 695 (1953).

11. See, e. g., United States v. Harris, *supra,* 403 U.S. at 581–82; Spinelli v. United States, 393 U.S. 410, 419 n. 7 (1969); United States v. Soyka, 394 F.2d 443, 453–54 (2 Cir. 1968) (en banc), cert. denied, 393 U.S. 1095 (1969).

together have constituted reasonable cause for arresting Roche prior to the search of his luggage; each fact augmented the probative force of the others.") Finally, in Smith v. United States, 358 F.2d 833, 837 (D.C.Cir. 1966), cert. denied, 386 U.S. 1008 (1967), then Judge, now Chief Justice, Burger stated:

"As we have often observed, probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers. We weigh not individual layers but the 'laminated' total. It has often been repeated, but it bears repetition, that 'In dealing with probable cause, * * * as the very name implies, we deal with *probabilities*. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, *supra* 338 U.S. at 175, 69 S.Ct. at 1310, 93 L.Ed. 1879. (Emphasis added.)"

We conclude that there was probable cause for the arrest of Raffone.[12]

## IV.

Having held that there was probable cause for the arrest of Raffone, we hold that the same probable cause justified the warrantless search of the truck Raffone was driving immediately prior to his arrest. Chambers v. Maroney, 399 U.S. 42, 47–48 (1970); Carroll v. United States, 267 U.S. 132, 153, 162 (1925).

Alternatively, we hold, since there was probable cause for the arrest, that the search was proper as incidental to a lawful arrest. Preston v. United States, 376 U.S. 364, 367 (1964); Draper v. United States, *supra* note 10, at 314; United States v. Thompson, *supra* note 8, at 222–24, and authorities cited.[13]

The order of the district court granting the petition for a writ of habeas corpus and discharging petitioner from custody is reversed. Petitioner is remanded to the custody of respondent.

Reversed.

12. While of no moment so far as our decision is concerned, we do note, in the interest of accuracy, that the Supreme Court of Connecticut, in holding that there was probable cause for Raffone's arrest, rested its decision on slightly different grounds than ours.

First, the Supreme Court focused primarily on the last tip, that of November 26. Its only reference to the second tip was that "Raffone, Sr., was already a suspect, as a result of reliable information received on November 11 or 12, 1966." 161 Conn. at 122, 285 A.2d at 327. There was no mention of the first tip. And the internal corroboration and reinforcement of the tips, viewed in conjunction, was not discussed.

Second, the Supreme Court grounded its decision with respect to the lawfulness of the arrest on the Connecticut Arrest Law, Conn.Gen.Stat. § 6–49 (Supp. 1972), holding that the November 26 telephone tip was "speedy information" and thus ground for arrest under § 6–49 which authorizes a warrantless arrest of "any person for any offense . . . when such person is taken or apprehended in the act or on the speedy information

of others"; and the Court then went on to determine whether Captain McHenry "was . . . justified in accepting [the speedy information] as a basis for acting on it." It held that he was, pursuant to the further provision of § 6–49 which authorizes a warrantless arrest of "any person who such officer has reasonable grounds to believe has committed or is committing a felony". 161 Conn. at 122; 285 A.2d at 327. Thus the Court in this respect reached the same result as we do, since "reasonable grounds" and "probable cause" have substantially the same meaning in this context. We have so held in construing § 6–49. United States v. Thompson, *supra* note 8, at 223.

13. Since the search here took place before the Supreme Court's decision in Chimel v. California, 395 U.S. 752 (1969), we need not decide whether the seizure would be allowable under the standards of that case. Williams v. United States, 401 U.S. 646 (1971); United States v. Bennett, 415 F.2d 1113 (2 Cir. 1969), cert. denied sub nom. Thomas v. United States, 402 U.S. 984 (1971).