UNITED STATES of America,
Plaintiff,

v.

James Patrick CONTINO et al.,
Defendants.

No. 74 Cr. 1154.

United States District Court,
S. D. New York.

Feb. 26, 1975.

Paul J. Curran, U. S. Atty., S. D. N. Y., New York City, for plaintiff; Lawrence B. Pedowitz, Asst. U. S. Atty., of counsel.

Frank A. Lopez, Brooklyn, N. Y., for defendant James Patrick Contino; Leonard Fusfield, Brooklyn, N. Y., of counsel.

Weiswasser & Weiswasser, Brooklyn, N. Y., for defendant Thomas Contino; Howard H. Weiswasser, Brooklyn, N. Y., of counsel.

William J. Gallagher, Federal Defender Services Unit, New York City, for defendant Christy King; Jack Lipson, The Legal Aid Society, New York City, of counsel.

PALMIERI, District Judge.

What follows could aptly be described as a tale of two banks. The essential issue before me is whether New York State Police officers acted without probable cause is effecting the arrest of the three defendants without warrants. The defendants have moved to suppress certain physical evidence seized at the time of their arrests, Rule 41, Fed.R.Cr.P. A hearing was held on February 21, 1975, at which New York State Police Officers Shea and Coffey testified for the Government and the defendant Christy King, a young woman, testified for the defendants.

### The Factual Background

On a warm Friday morning, August 30, 1974, an experienced police officer, Detective Sergeant David Shea of the Palisades Interstate Parkway Police, was leaving a supermarket with a bag of groceries, accompanied by his two children aged 13 and 6, in a large shopping

center in Stony Point, New York. He was off duty. There were two banks in this shopping center. The Provident Savings and Loan Association (the Provident Savings) at the northwest corner of the area, and the Marine Midland Bank in the southwest corner. Detective Shea was aware of the high incidence of cashing stolen bonds in this area. Despite his preoccupation with groceries and children, Shea's attention was called to a blue Chevrolet parked near his own car, with its motor running and positioned in the general direction of the Provident Savings, with one of the defendants (later identified as Thomas Contino) seated behind the wheel. As Shea was entering his car he observed Thomas Contino tap his horn twice in signal fashion at which another defendant (later identifed as James Contino) standing by the Provident Savings did an about-face, walked to the blue Chevrolet and entered it. After a brief conversation between the two Continos, their attention apparently focused on the bank, Thomas left the car, apparently with the motor running, walked to the front of the Provident Savings and out of Shea's sight. Thomas Contino returned to the car a minute later and drove to the vicinity of the Marine Midland Bank, parking in such a way that the rear wheels of the blue Chevrolet were against the curb and the front wheels unobstructed and in an out-going direction. James Contino put on a jacket and entered the Marine Midland Bank. Although he could not be sure, it was Shea's impression that the motor was not turned off. Shea was sufficiently alarmed by this time to seek help. He obtained it promptly by hailing a passing car on a nearby state highway driven by a State Police officer whom he knew, Investigator John Coffey[1] of the Executive Department of the New York State Police. Shea had a brief conversation with Coffey, explaining his suspicions that an armed robbery might be taking place and giving an account of what he had already observed. Coffey immediately obtained by radio a special check of the registration number of the blue Chevrolet (which resulted in determining that it was a rented vehicle), and requested two police cars with uniformed troopers to meet him forthwith. These cars responded swiftly and on Coffey's instructions were positioned at the two access roads to the shopping center, one north and one south, after the blue Chevrolet had been identified for them. They were able to maintain surveillance of the blue Chevrolet from their respective positions. At about this time Thomas Contino drove to a drugstore in the shopping center, parked in front of it with the motor apparently running, and entered the drugstore for a few moments, looking in all directions as he left. He then drove to the Provident Savings where he picked up the defendant Christy King who was observed leaving the bank. The blue Chevrolet, with Thomas Contino at the wheel, again proceeded south through the parking lot to the rear of the Marine Midland Bank where the defendant King left the vehicle and entered the bank. Thomas Contino again parked the blue Chevrolet in the manner already described, with its rear wheels to the curb and in what might be called a "quick getaway" position. The motor was apparently kept running although proof of this is not clear. Shea and Coffey decided to enter the Marine Midland Bank and the uniformed troopers' cars were instructed to prevent the blue Chevrolet from leaving the shopping center parking lot if it attempted to do so. The defendant Christy King was observed leaving the Marine Midland Bank and

---

1. Although he bears the title of Investigator, and was so referred to at the hearing, Mr. Coffey could more properly be called a detective. He was experienced in police work, having been a uniformed State Trooper for eight and a half years, and his assignment to the position of Investigator was deemed to be a promotion. He testified that he was a detective.

walked towards the blue Chevrolet. Shea and Coffey stopped in front of the bank and prepared to enter it. Coffey entered the bank first. Shea followed. James Contino was observed at a desk just inside the entrance door of the bank signing on the reverse side of United States savings bonds and using as identification a driver's license immediately recognized by Coffey as palpably counterfeit. The bonds were in the name of Bruce Terry and so was the counterfeit driver's license. Coffey quietly arranged with a member of the bank personnel to have a brief and private conversation with the bank employee assisting James Contino. He learned from her that Contino was cashing numerous savings bonds. Coffey then proceeded to arrest James Contino for possession of a forged instrument and, in searching his person, obtained from him a Social Security card in the name of Bruce Terry and an additional identification in the name of James Contino. Contino admitted to him, in answer to the question as to what his right name was, that it was Contino. Coffey also took possession of the savings bonds in the name of Bruce Terry. Immediately after the arrest of James Contino, Coffey asked Shea to go to Coffey's car, call the two troopers' cars on the radio and advise them to hold the blue Chevrolet in the parking lot. Coffey and Shea then left the bank with James Contino in handcuffs (which Shea had had to borrow from one of the troopers) and James Contino was placed in Coffey's car. The three of them then proceeded in this car to where the blue Chevrolet was being detained by the uniformed police.

The occupants of the blue Chevrolet, Thomas Contino and Christy King, had been requested by the uniformed State Troopers at gun point to leave the car and it is clear that they were already under arrest as Shea and Coffey approached them. Christy King testi-fied that she and Thomas Contino were handcuffed by these officers. While the testimony of Coffey and Shea was not explicit on this point, this aspect of the arrest is assumed to be accurate. It adds nothing of significance, however, the crucial point being that they were under arrest. At this point in time it is questionable whether any of the police officers involved had probable cause to believe that Thomas Contino and Christy King were aiding or abetting James Contino. The Government suggests that the preceding circumstances above described—the observations in the shopping area parking lot—considered together, clearly point to this. See Raffone v. Adams, 468 F.2d 860, 866 (2d Cir. 1972), and authorities citied at 866–67. The defendants, on the other hand, claim that none of these circumstances, was indicative of any wrongdoing whether considered singly or in their totality. The Court need not grapple with this issue, however, because the circumstances which immediately ensued resolve any doubt with respect to the legality of the police officers' actions.

As Coffey and Shea approached the blue Chevrolet, Alice Bogert, a teller of the Provident Savings, approached Coffey and pointing to Christy King identified her as the girl who had just been in her bank and cashed numerous savings bonds in the name of "Priscilla Coulter" for the approximate sum of $620. Coffey then approached Christy King and asked what her name was. She declined to give it. Thomas Contino, who was standing nearby, told her at the same time that she did not have to say anything until she talked to an attorney. Since the engine of the Chevrolet was still running Coffey pushed the door wide and shut off the ignition. As he did so he saw on the floor of the car, near the passenger seat, a number of bonds with the name Bruce Terry on them, the same name on the bonds with

which James Contino had been involved a very short time before. Coffey's action in shutting off the ignition was motivated by several purposes: (1) compliance with standard police procedure whenever a motor vehicle is involved in a possible violation of law, (2) the prevention of possible escape, and (3) avoidance of wasteful use of gasoline.

Coffey seized the bonds he had just seen on the floor of the car and placed both Christy King and Thomas Contino under arrest for possession of stolen property. There then followed a search of both defendants. Thomas Contino was in possession of about $630 in currency (Christy King had redeemed the Coulter bonds for about the same amount, according to Alice Bogert's previous statement to Coffey). King had no currency in her possession. Her handbag, taken by Coffey from the front seat of the blue Chevrolet produced a counterfeit New York State motor vehicle operator's license in the name of Priscilla Coulter, the name Alice Bogert told Coffey the defendant King had used at the Provident Savings.

### The Arrest of All the Defendants Was Based Upon Probable Cause

The abundance of reasonable cause for the arrest of James Contino has already been referred to.

"Probable cause exists where 'the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L. Ed. 543." Brinegar v. United States, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949).

■ James Contino was apparently violating the law in full view of Coffey.

Coffey actually observed Contino in the act of endorsing United States Savings Bonds by means of a counterfeit driver's license in the name of the ostensible owner of the bonds. The circumstances in the shopping center parking lot which preceded the observations of James Contino's conduct in the bank could well have spelled out in Coffey's mind a complete substantiation for the denouement to which he was a witness. But even if these preceding circumstances were to be eliminated from consideration, the Marine Midland Bank episode was sufficient in and of itself to justify his action in arresting James Contino.

■ The subsequent arrests of Thomas Contino and Christy King were also based on probable cause. Not only had the officers observed Thomas Contino providing transportation to James Contino, a man they now had reasonable cause to believe had forged and uttered savings bonds, but moments later, as he approached the blue Chevrolet, Alice Bogert, the teller of the Provident Savings provided Coffey with whatever reasonable cause he needed on a silver platter. After this conversation Coffey had ample reason to believe that Christy King was working jointly with the two Continos in the cashing of stolen bonds and if any confirmation was needed this was provided immediately after when the approximate amount of the proceeds of the cashing of the stolen bonds at the Provident Savings was found on Thomas Contino's person and the forged identity of Priscilla Coulter was found on Christy King, who had no money whatever in her possession. The arrest of Thomas Contino and Christy King effected by Coffey can be deemed to have been a rearrest and as such, having its own independent basis (the conversation with Alice Bogert and the observation of the Bruce Terry bonds on the floor of the blue Chevrolet), was entirely legal. The prior arrest by the State police

officers, even if it were deemed to have been on an insufficient basis, does not preclude the subsequent arrest based upon probable cause. *See* Government of the Virgin Islands v. Gereau, 502 F.2d 914, 925 (3d Cir. 1974) ; Tasby v. United States, 451 F.2d 394 (8th Cir. 1971), cert. denied, 406 U.S. 922, 92 S.Ct. 1787, 32 L.Ed.2d 122 (1972) ; Menard v. Mitchell, 430 F.2d 486, 491 n. 26 (D.C. Cir. 1970) ; United States v. Thomas, 396 F.2d 310, 312 (2d Cir. 1968) ; Bowlen v. Scafati, 395 F.2d 692 (1st Cir. 1968) (Aldrich, J.) ; Albrecht v. United States, 273 U.S. 1, 10, 47 S.Ct. 250, 71 L.Ed. 505 (1927) (Brandeis, J.) [2]

The events above described, following each other in rapid succession, displayed competent police work, untainted by any violation of the defendants' constitutional rights. This case does not involve the exploitation of an illegal arrest or the seizure of property for the purpose of seeking out information for the *ex post facto* justification of initial police action. Here the facts unfolded swiftly and with increasing clarity after the Marine Midland Bank episode and in the short space of time between the arrest of James Contino and the search of Thomas Contino and Christy King the police were provided with ample justification for all their actions in this case.

The motions to suppress are denied in all respects, except as to certain post arrest statements of Christy King. As to these statements the Court received no evidence and any issue that may remain with respect to them is reserved for the trial court.

It is so ordered.

---

2. Of course, a second arrest cannot be based on evidence illegally obtained as a result of an initial unlawful arrest. *Compare* Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959) ; United States v. Guana-Sanchez, 484 F.2d 590, 592 (7th Cir. 1973), cert. granted, 417 U.S. 967, 94 S.Ct. 3169, 41 L.Ed.2d 1138 (1974). But here the search of Thomas Contino, Christy King and their vehicle did not take place until after Investigator Coffey had spoken to Alice Bogert and thus had probable cause to arrest these two defendants. The Court has already ruled that Alice Bogert's identification of Christy King was not tainted by the latter's arrest at the hands of the uniformed troopers. Alice Bogert's statements were entirely unsolicited and voluntarily given. There is no evidence to support a causal link between the handcuffing of Christy King and Alice Bogert's statement to Coffey.