**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Cynthia BROWN, Defendant-Appellant.**

**No. 79–1582.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 6, 1979.
Decided Aug. 28, 1980.

William T. Dwyer, Jr., Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., Robert J. Hackman, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, BAUER and CUDAHY, Circuit Judges.

BAUER, Circuit Judge.

On January 19, 1979, defendant-appellant Cynthia Brown and two co-defendants, Joyce Stokes and Maurice Townsend, were named in a one count indictment charging them with the unlawful possession of thirty-five checks stolen from the United States mails in violation of Title 18, United States Code, Section 1708. Appellant filed a motion to suppress certain evidence on the ground that it was tainted by her alleged unlawful arrest. Following the submission of memoranda and a plenary hearing, the motion was denied by the district court.

Subsequent to the denial of the motion, the appellant waived her right to trial by jury and entered into a written stipulation with the government as to the facts to be adduced at trial, and offered no evidence in her defense. On April 25, 1979, based upon the stipulated evidence, the appellant was found guilty as charged in the indictment. On May 23, 1979, Brown was sentenced to a period of five years' probation. The sole issue on appeal is whether the trial court erred in denying the appellant's motion to suppress. We conclude that the district court properly denied the motion and accordingly affirm the judgment of conviction appealed from for the reasons set forth below.

I

The facts material to the disposition of this appeal are not in dispute. On October 26, 1978, Detective Paul Polk of the Park Ridge Police Department was on duty at the First National State Bank of Park Ridge, Illinois to investigate previously reported instances of forged checks being negotiated at the bank's drive-in facility. At approximately 3:30 p. m., Detective Polk observed co-defendant Stokes attempt to cash a check at the drive-in window. Stokes was informed by the teller that the amount of the check presented for payment was too large for negotiation at the window and that Stokes would be required to cash the check in the bank lobby, which was at that time closed for business.

Stokes departed the drive-in facility area and Detective Polk followed in his unmarked police vehicle. At the intersection in front of the bank, Polk observed the appellant and co-defendant Townsend enter Stokes' automobile. As the Stokes vehicle turned a corner, Polk noticed that it did not bear a rear license plate. He then activated his emergency signal and curbed the Stokes automobile several blocks from the bank.

At Polk's request Stokes produced her Illinois driver's license which listed a residence address in Park Forest, a suburb located a considerable distance from Park Ridge. Upon inquiry, Stokes claimed that her rear license plate had been stolen together with her car keys. She also claimed that she had attempted to cash a $100 bill at the bank, rather than a check. Polk issued a citation to Stokes for operating an improperly licensed vehicle.

Detective Polk then checked the license plate number with the police department over his radio and verified that the vehicle was registered to Stokes at the address indicated on the driver's license. He also confirmed that the transaction at the bank involved an attempt to cash a check with a mortgage book. Polk then asked Stokes to produce her mortgage book. Stokes responded by again asserting that she had only attempted to cash a $100 bill. Polk asked Stokes to exit her automobile and he conducted a brief search of the area in which she had been seated, as well as the front passenger area where Brown had been seated and the back seat area where Townsend had been seated. Polk searched the appellant's purse and conducted a frisk search of co-defendant Townsend. Polk asked the appellant for identification, which she produced.

Two marked squad cars arrived at the scene. Polk dispatched one officer to the bank to locate the teller involved in the transaction and to notify the bank's security personnel. The other police vehicle, driven by Officer Schiarra, remained on the scene. Polk then directed Stokes to follow his car back to the bank. The Stokes automobile was followed by Officer Schiarra in his squad car. Detective Polk testified that the appellant and her co-defendants were not under arrest, but were not free to leave.

Upon arriving at the bank, the teller identified Stokes as the woman involved in the transaction. Officer Schiarra informed Polk that he had seen Stokes and the appellant pass an object to Townsend in the back seat and that Townsend had hidden the object behind him. Polk then searched the rear seat area by reaching between the cushions and found a mortgage book and check belonging to a Mr. DiPietro. Polk showed the book and check to the teller, who identified them as having been earlier presented to her by Stokes. An assistant vice-president of the bank stated that he knew Mr. DiPietro and that none of the defendants were related to DiPietro.

The defendants were directed to reenter the Stokes automobile and to follow Polk to the police station. In the police station parking lot, Polk again searched the automobile and, upon removing the rear seat, found additional checks. Polk asked Stokes for the key to the trunk and she again claimed that it had been lost. The defendants were taken into the police station and placed in a holding area. Townsend was seated on a bench for five to ten minutes after his arrival at the station. When Townsend left the bench, Polk noticed a General Motors automobile key on the bench. The key fit the trunk lock of Stokes' car and upon searching the trunk, Polk recovered additional checks. The defendants were held overnight at the Park Ridge Police Station, and were released to federal authorities the next morning.

Two of the pieces of mail and two blank checks found in the trunk of Stokes' automobile bore the fingerprints of the appellant at the time of recovery. On October 27, 1978, Brown gave a statement to Postal Inspectors in which she admitted having participated in the scheme outlined above, as well as having knowledge of previous dealings by Stokes and Townsend involving the negotiation of stolen checks.

At the hearing on the appellant's motion to suppress her statement and fingerprint samples, the district court found that the initial stop of Stokes' car was proper and that the return of the three subjects to the bank was on arrest. The district court further held that as to co-defendant Stokes, the arrest was based on probable cause, but probable cause to arrest the appellant and co-defendant Townsend was at that point lacking. The court found, however, that the officer's observation of the passing of an

object by Stokes and Brown to Townsend, who attempted to conceal it, coupled with the recovery of the stolen mortgage book, gave rise to probable cause to arrest the appellant and co-defendant Townsend. Accordingly, the court held that because probable cause to arrest the appellant had been acquired through legitimate police conduct which did not exploit the illegality of the appellant's initial arrest, the statements and fingerprints of the appellant were not the fruits of an unlawful arrest.

## II

■ The appellant does not contend on appeal that the initial stop of Stokes' car was improper or that the return of Stokes to the bank was not based on probable cause to arrest. Nor does Brown argue that the conduct of the three arrestees on the return to the bank did not constitute probable cause to arrest all three persons. Brown also concedes that the discovery of the stolen mail was not tainted by any illegality. However, the appellant does contend that the probable cause arising from the arrestees' conduct during their return to the bank was tainted by her illegal arrest preceding her return to the bank. We hold that the appellant's conduct subsequent to her initial unlawful arrest constituted an independent basis for probable cause to arrest the appellant which purged the taint of her unlawful arrest.

Appellant's position on appeal is grounded primarily upon a "but for" test: but for the appellant and Townsend having been illegally in custody, the police would not have observed them passing and concealing the mortgage book and check in the automobile. However, the applicability of such a standard in this context has been consistently rejected. In *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Supreme Court held:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment

of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

371 U.S. at 487–488, 83 S.Ct. at 417 (citation omitted). *Accord, Brown v. Illinois,* 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975); *United States v. Ceccolini,* 435 U.S. 268, 276, 98 S.Ct. 1054, 1060, 55 L.Ed.2d 268 (1978); *United States v. Carsello,* 578 F.2d 199, 202 (7th Cir.), *cert. denied,* 439 U.S. 979, 99 S.Ct. 565, 58 L.Ed.2d 650 (1978). Thus, the proper inquiry is whether the Park Ridge police exploited Brown's illegal custodial status during her return to the bank in order to obtain probable cause to arrest.

The record in this case fails to support the contention that the police exploited the appellant's unlawful detention. The police took no action to prompt the passing of the mortgage book and check in the automobile. Rather, it was an unexpected event which was carried on in the plain view of Officer Schiarra as he followed the Stokes automobile to the bank. Moreover, the conduct in question was initiated by Stokes, who was admittedly under a proper arrest and therefore legitimately subject to observation by Officer Schiarra. Thus, the appellant was merely continuing an action begun by the legal arrestee, Stokes.

■ Where the actions of a third party, rather than the illegal police conduct, are responsible for the creation of the challenged evidence, the taint caused by the original illegal conduct is thereby purged. *United States v. Greer,* 566 F.2d 472, 474 (5th Cir.) (*per curiam*), *cert. denied,* 435 U.S. 1009, 98 S.Ct. 1881, 56 L.Ed.2d 391 (1978). Since in this case, Stokes, a third party, set in motion the conduct which established an independent basis for probable cause to arrest the appellant, any taint associated with the appellant's initial unlawful arrest was purged. *United States v. Contino,* 394 F.Supp. 607, 610–611 (S.D.N.Y. 1975). *See also United States v. Houle,* 620 F.2d 164, 165–177 (8th Cir. 1980) (*per cu-*

*riam* ); *Rawlings v. Kentucky,* —— U.S. ——, 100 S.Ct. 2556, 2561–2563, 65 L.Ed.2d 633 (1980). We therefore conclude that probable cause for the appellant's re-arrest arose independently and in the absence of any police exploitation of her initial illegal detention. Since Brown was in custody based on probable cause at the time her fingerprints and statement were obtained, the district court properly denied her motion to suppress that evidence.

The judgment appealed from is affirmed and the Clerk of this Court is directed to enter judgment accordingly.

Affirmed.